In the Matter of the Appraisal, under the Transfer Tax Act, of the Estate of JOHN D. BREZ, Deceased.

THE COMPTROLLER OF THE STATE OF NEW YORK, Appellant; JULES RACINE et al., as Executors, etc., Respondents.

| 172 | 609 |
| Case 2 | |
| s172 | 648 |

TRANSFER TAX ON SUCCESSION OF LIFE TENANT — LEGISLATION REQUIRED TO MAKE IMPOSITION OF TAX FAIRER TO LIFE TENANT. Although the provision of the Transfer Tax Act (L. 1896, ch. 908, § 230; amd., L. 1899, ch. 76) requiring the transfer tax upon contingent remainders to be paid forthwith out of the *corpus* of the estate transferred, has been held to be constitutional, because the rate or amount of tax on the succession of the life tenant is within the discretion of the legislature to prescribe and is, in effect, simply the imposition of an additional tax on the life tenant (See *Matter of Vanderbilt,* 172 N. Y. 69), *it seems,* bearing in mind the general character of the tax and that the legislature has deemed it right to prescribe different rates of taxation, depending on the relation of the legatee or devisee to the deceased, that, if it is desired to make taxes on remainders payable immediately, it would be fairer to the life tenant to have the tax assessed at the lowest rate of any succession

provided for by the will, and that, in case the remainder eventually vest-ing should prove taxable at a higher rate, then such increased tax should be payable at the time of its enjoyment, and that legislation to that effect should be enacted.

*Matter of Brez*, 69 App. Div. 619, reversed.

(Argued October 7, 1902; decided October 21, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, made March 7, 1902, which affirmed a decree of the Kings County Surrogate's Court assessing a transfer tax upon the estate of John D. Brez, deceased.

*Robert B. Bach* for appellant.

*Frederic R. Coudert, Jr.,* and *Howard Thayer Kingsbury* for respondents.

CULLEN, J. We are of opinion that all the questions pre-sented on this appeal, including both the construction and the constitutionality of the statute of 1899 (Chap. 70) providing for the present appraisal and taxation of remainders created by will upon contingencies or where the ultimate beneficiaries cannot be immediately ascertained, are disposed of by our recent decision in *Matter of Vanderbilt* (172 N. Y. 69), and the order appealed from must, therefore, be reversed on the authority of that case. We feel, however, justified in calling the attention of the legislature to an inequality caused by the statute, which may have escaped its notice and which we sub-mit to its wisdom whether it would not be proper to remedy. In all the cases covered by this statute there must be one or more intermediate estates, generally life estates, during the period elapsing between the death of the testator and the hap-pening of the contingency (commonly the death of the life tenant) on which the remainders become vested absolutely and the remaindermen become certain. The tax on the remainders being paid out of the *corpus* of the estate dimin-ishes the income of the life tenant by the interest on the amount of the tax. The constitutionality of this provision, though it affects the life tenant, we have upheld because the

rate or amount of tax on the succession of the life tenant is within the discretion of the legislature to prescribe, and the scheme in effect is simply the imposition of an additional tax on the life tenant. It is evident, however, that the legislature has determined that in many instances the tax may be excessive; for while it directs that the tax shall be imposed at the highest rate for any possible succession that may occur in any contingency, it provides that if it eventually transpires that the succession which actually happens is subject to a lower rate the excess of tax, with interest, shall be repaid by the state. The interest on this excess ought fairly to go to the life tenant, though the statute is silent on the subject. But even if given to the life tenant it can be repaid to his estate only after his death, for it is commonly his death that finally settles the rate of tax. This is hardly an equivalent for the diminution of his income during life, an income oftentimes necessary for his support. It seems to us that, bearing in mind the general character of the tax and that the legislature has deemed it right to prescribe different rates of taxation depending on the relation of the legatee or devisee to the deceased, if it is desired to make taxes on remainders payable immediately, it would be fairer to the life tenant to have the tax assessed at the lowest rate of any succession provided for by the will, and in case the remainder eventually vesting should prove taxable at a higher rate, then such increased tax should be payable at the time of its enjoyment.

Nor would this change be detrimental to the state. Our experience informs us that in the majority of cases the remainders are first appointed to the issue of the life tenant and descendants of the testator and are given to collaterals or strangers only in default of issue. The lowest rate of tax thus usually proves the final rate. Where the state imposes in the first instance a higher rate of tax it becomes obligated to repay the excess after a lifetime with six per cent interest, while it could borrow the money at half that rate.

The orders of the surrogate and Appellate Division should be reversed and proceedings remitted to the surrogate of Kings county to assess the tax as prescribed in the statute.

BARTLETT, J. (dissenting). I am of opinion that the recent decision of this court in *Matter of Vanderbilt* (172 N. Y. 69) does not cover all the questions raised in this case and is, therefore, not a controlling authority.

John D. Brez died November 18th, 1899, leaving a last will and testament which was admitted to probate in Kings county on January 23rd, 1900.

The testator, after certain directions as to the investment of his residuary estate, directed his executors and trustees to pay to his sister, Elizabeth Aline Gillet, the income thereof, not exceeding twenty thousand dollars per year, the remainder to be capitalized and added to the principal.

In a construction suit this provision as to income was held illegal and void, and it was determined that Mrs. Gillet was entitled to receive the total income of the residuary estate if she had no issue. If issue were born to her the income in excess of twenty thousand dollars per year should be paid to such issue. If she died leaving issue, they would be entitled to the principal of the residuary estate. If she died leaving no issue, the will provides that the income of the residuary estate " be devoted to purposes of charity or religion of the Protestant faith only; or still better to education and art applied to industry, either directly or by means of encouragement, such as prizes for essays or prizes for examples, or in any other way which, according to their best judgment, will be most beneficial to mankind, said income to be devoted and distributed by said executors and trustees, or by a society organized for that purpose, according to their best judgment and the wants of the times."

This clause of the will was also judicially construed, and it was held that upon the death of Mrs. Gillet, without issue, the discretionary powers " will vest in the qualifying executors then living or acting, or in default of any such executor, in the Supreme Court in perpetuity; that if the transfer to a society to be incorporated as above referred to be made, then the trust will vest in such society; if no such transfer be made by the executors, upon the death of the last surviving executor the trust and powers will vest in the Supreme Court in perpetuity."

This case involves the construction of the Transfer Tax Act, as amended by chapter 76 of the Laws of 1899. This act added the new provision in regard to imposing a transfer tax, as follows: " When property is transferred in trust or otherwise, and the rights, interests or estates of the transferees are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, a tax shall be imposed upon said transfer at the highest rate which, on the happening of any of the said contingencies or conditions, would be possible under the provisions of this article, *and such tax so imposed shall be due and payable forthwith, out of the property transferred;* provided, however, that on the happening of any contingency whereby the said property, or any part thereof, is transferred to a person or corporation *exempt from taxation under the provisions of this article,* or to a person taxable at a rate less than the rate imposed and paid, such person or corporation shall be entitled to a return of so much of the tax imposed and paid as is the difference between the amount paid and the amount which said person or corporation should pay under the provisions of this article, with legal interest thereon from the time of payment."

The amount of the net residuary estate was determined by the appraiser to be $1,022,178.72. The present value of the total residuary estate, after the death of Mrs. Gillet, was assessed at $575,252, and the tax thereon at five per cent fixed at $28,762.60. The remainder, in both real and personal estate, was declared to be contingent. This report was confirmed by the surrogate, but afterwards on appeal to him it was modified by striking out the interests. of the unknown persons styled " contingent remaindermen " as not presently taxable or ascertainable, and that there was no present transfer of the remainder of the estate of the testator after the death of Mrs. Gillet, and that the fair market value of the interests to be hereafter transferred were not presently ascertainable, and that the imposition of the tax should be postponed. This order was unanimously affirmed by the Appellate Division.

We have, therefore, presented the question, where contin-

gent remaindermen are persons unborn, corporations unformed and charitable schemes undevised, whether it is competent for the legislature to take from the body of the residuary estate the highest rate of tax upon these contigent transfers, thereby reducing the income of the life tenant. In other words, are these contingent interests presently taxable?

It is insisted that our recent decision in the case of *Matter of Graves* (171 N. Y. 40) sustains in principle the validity of this tax. It is doubtless true that this case holds, following *Allen* v. *Stevens* (161 N. Y. 122), that the naming of indefinite beneficiaries in a will no longer invalidates a trust contemplating such beneficiaries, but that case did not in any way involve the present phase of the transfer tax now under consideration.

In the case before us we have a very peculiar and novel situation. (1) As to the issue of Mrs. Gillet, who are entitled to take the residuary estate at her death if they are in being at that time.

It is true that owing to the advanced age of Mrs. Gillet the probability of issue is quite remote, but the possibility of issue exists physiologically.

We have here possible contingent remaindermen not in being, to whom no transfer has been made, as it cannot logically be said that the effect of a will is to transfer from the testator to the beneficiary when the latter is not in existence.

(2) In the event of the failure of issue, the will directs the executors and trustees to use the income of the residue of the estate for the " purposes of charity or religion of the Protestant faith only, or, still better, to education and art applied to industry, either directly or by means of encouragement, such as prizes for essays or prizes for examples, or in any other way which, according to their judgment, will be most beneficial to mankind, said income to be devoted and distributed by said executors or trustees, or by a society organized for that purpose, according to their best judgment and the wants of the times."

We have here disclosed certain contingencies. The executors and trustees are authorized to devote the income of the residuary estate to purposes of charity *or* religion of the

Protestant faith only. If the executors should see fit to organize a strictly religious corporation of the Protestant faith it would not be subject to the transfer tax. On the other hand, if it was a charitable society of the Protestant faith, it would be liable to the transfer tax. (*Matter of Watson*, 171 N. Y. 256.)

The important point presented, which was not involved in *Matter of Vanderbilt* (*supra*), is, that aside from the possibility of unborn heirs becoming contingent remaindermen, there is the additional possibility that a religious corporation may be organized in the future, not taxable, and become the remainderman, entitled in perpetuity to the income of the trust property.

Notwithstanding this situation the legislature has provided that there shall be taken out, for the benefit of the state, from the principal sum, to the income of which the life tenant is entitled, a tax at the rate of five per centum, which is to be refunded to the estate with interest at the death of the life tenant if the property is transferred to a person or corporation exempt from taxation.

This may be meting out a certain measure of justice to the remainderman, but the life tenant, who will have passed away when restitution is made, has been deprived of the income on the amount of the tax. How large this tax may be in these days of great wealth is well illustrated in the Vanderbilt estate, where the transfer tax was enormous.

Under the operation of this amendment of 1899 it is possible for a life tenant to be deprived of the income from a large amount of property during the entire period of his life, which may endure for forty or fifty years.

At the instant of testator's death the life tenant becomes vested with the legal right to receive the income of the residuary estate during life. This right is property in the strictest sense of the term.

This court has repeatedly held that the transfer tax is not imposed upon property but on the right of succession or transfer.

What power has the state, even if it be omnipotent in the domain of taxation, as is so often said, to impose a transfer tax

when the remainderman, not in existence, may be a religious corporation, subject to no tax?

It is clearly, so far as the life tenant is concerned, depriving him of property without due process of law.

The power of the legislature to impose taxes is subject to certain constitutional limitations.

To say that the state may deprive a life tenant of the income of many thousands of dollars during half a century by presently collecting a transfer tax on an unvested residuary estate, where the corporate remainderman to enjoy it is yet to be created and may be exempt from taxation, is to override the plain provision of the Constitution prohibiting the taking of property without due process of law.

The order appealed from should be affirmed, with costs.

PARKER, Ch. J., HAIGHT and WERNER, JJ., concur with CULLEN, J.; O'BRIEN and VANN, JJ., concur with BARTLETT, J.

Order reversed, etc.