PEOPLE'S NAT. BANK *et al.* v. BOARD OF COM'RS OF KINGFISHER
COUNTY *et al.*

No. 2056, Okla. T.   Opinion Filed July 13, 1909.

(104 Pac. 55.)

1.   **CORPORATIONS—Title to Assets—Transfer of Stock.** The title
to corporate assets is in the corporation, and not in the stock-
holders owning stock therein, and upon a transfer of stock the
title to such assets remains unaffected.

2.   **BANKS AND BANKING—Sale of Stock—Estoppel.** A stock-
holder and director in a banking corporation organized and ex-
isting under the laws of the territory of Oklahoma, having cer-
tain property consisting of lost warrants, inadvertently inter-
mingled with the assets of said bank at the time of the sale of
his stock therein, is not, as against said bank suing thereon as
owner, estopped to set up title thereto, either before or after the
completion of its conversion into a national bank.

(Syllabus by the Court.)

*Error from District Court, Kingfisher County; C. F. Irwin, Judge.*

Action by the People's National Bank and others against the
Board of County Commissioners of Kingfisher County and others.
A. J. Seay intervened. Judgment for intervener, and plaintiff
bank brings error. Affirmed.

On July 20, 1899, the People's Bank, of Kingfisher, brought
suit in the probate court of Kingfisher county against the board of
county commissioners of that county on two warrants issued by
that county for $210 and $24, respectively. On July 25, 1899,
defendants demurred, and the same was overruled, and on July
21, 1900, A. J. Seay appeared in open court and by leave and
agreement of parties intervened and set up title to said war-
rants, claiming to have lost them, disclaiming any knowledge as
to how they came to be in the possession of the plaintiff, and pray-
ing judgment thereon with interest. On September 26, 1903, by
agreement, the People's National Bank was substituted for the
People's Bank, and, by leave, filed answer to the petition of in-

tervention denying generally the allegations in said petition, and stating, in substance: That on June 14, 1899, and prior thereto, the People's Bank was duly organized under the laws of the territory of Oklahoma, and doing a general banking business at Kingfisher, Okla., with a capital stock of $10,000, with intervener as a stockholder, director, and vice president therein, at which time it was in the possession of said warrants claiming title; the same being listed and registered on its books and kept by it among the warrants and bills receivable, which said facts were well known to its directors, including intervener. That on said day John F. Stone, F. L. Winkler, F. L. Boynton, and H. K. Bickford became the owners by sale and transfer of all the stock and property of said bank, and on March 16, 1901, increased its capital stock and took in other stockholders, and on April 24, 1901, reorganized and became a national bank with a capital stock of $25,000. That by reason of the facts set forth intervener was estopped from setting up title to said warrants and prayed judgment thereon as stated in the petition of the People's Bank. On the same day intervener demurred to this answer, which was overruled, whereupon he filed a general denial in reply thereto.

There was trial and judgment for the People's National Bank, against the county of Kingfisher for $367.75, and that intervener take nothing by his suit, which was dismissed. There was an appeal by intervener to the district court, where, on October 10, 1904, the then stockholders of the People's National Bank, by leave of court, intervened, reciting the history of the litigation and sought to enjoin the intervener, A. J. Seay, from further prosecution of his suit, which was demurred to by Seay and later, on his motion, stricken from the files.

On December 9, 1905, the cause was tried to the court, and, after the warrants were introduced in evidence, was submitted on an agreed statement of facts, in substance: That on January 3, 1898, the People's Bank was incorporated under the laws of the territory of Oklahoma with a capital stock of $10,000. That after several changes in the personnel of the stockholders, on

June 10, 1899, its stock was owned as follows: George Newer, 20 shares, H. K. Bickford, 50 Shares, A. J. Seay, 30 shares—they being president, cashier, and vice president, respectively, and constituting the board of directors. That on said day Seay assigned his 30 shares aforesaid to John F. Stone, the transfer being duly made on the back of his stock certificate, and delivered the same to him on June 14, 1899. On June 13, 1899, George Newer, assigned his 20 shares of its stock, by transfer duly made on the back of his stock certificate, to F. L. Boynton. and on the same day H. K. Bickford, by transfer duly made on the back of his stock certificate, assigned his 50 shares to ———. That on June 14, 1899, at a meeting of the stockholders of said bank, to wit, said Stone, Bickford, Boynton, and Winkler, the latter being elected president and said Bickford secretary, the resignations of Seay, Newer, and Bickford were accepted, with the exception of the latter, who retained three shares of the stock and agreed to remain as cashier for a short time. Said Stone, Winkler, and Boynton were elected as a new board of directors, and it was ordered that the stock of the bank be entered on the books of said corporation transfer record and new stock issued to the incoming parties. On that day the stock of said bank was owned by Boynton, 30 shares; Winkler, 20 shares; Stone, 47 shares; and Bickford 3 shares. That after several changes in the personnel of its stockholders, on February 2, 1901, the capital stock of said bank was increased to $25,000, and on March 25, 1901, was converted into a national bank, under the name of the People's National Bank. That on a day between June 10, 1899, and June 14, 1899, said Newer and Seay resigned their offices as president and vice-president and as members of the board of directors, and have not since been connected in any official way with or as stockholders in said bank. That on the latter day, said Boynton, Stone, and Winkler were elected president, vice-president, and cashier, respectively, of said bank. That on June 10, 1899, and for some time prior thereto, the intervener, A. J. Seay, was the owner of the warrants in controversy and never, at any time, sold or transferred them to the

People's Bank, or any person or persons. That on said date and up to about June 25, 1899, said bank carried a warrant account on its individual deposit ledger, which amounted to $1,218.45.

"That no list or schedule or description of the warrants so carried in said individual deposit ledger was made out by said bank; but that the warrants representing said amount were kept in an envelope or jacket in the last pocket of the leather note case in which all the bills receivable and municipal bonds and warrants of the bank were all kept, and among the other warrants of the bank in the vault of said bank. That at the time the said A. J. Seay transferred his stock in said bank and resigned his office as vice president and member of the board of directors of said bank, the warrants were in said envelope, or said jacket, in said vault among the other warrants belonging to said bank."

That at said time "he had no actual, personal knowledge of the fact that said warrants were in said jacket, nor that he ever had any personal, actual knowledge that said warrants were in said jacket among the other warrants owned by said bank, nor had he ever had any personal, actual knowledge that such was the case, until after the commencement of this action." At the time said Seay sold his stock to Stone, and "at the time of said sale and transfer of said bank, said warrants were among the bills receivable, and other assets of said bank, and it required said warrants to make up the full amount of bills receivable, warrants, and assets of said bank; and at said time said Seay received his full consideration for his stock, and other interests in said bank, and has at all times kept, and still retains, the same."

The undisputed testimony shows: That these warrants were found by the new management among the assets of the People's Bank, a few days after June 14, 1899, and were sued on a short time thereafter; that intervener first saw them after their loss, with the papers in that suit; that he had been hunting them before and had, he thought, located them in the People's Bank before he sold his stock. No further resistance was made by the board of county commissioners, which agreed that judgment might go for either People's National Bank, or the intervener, Seay, whereupon the court rendered judgment in favor of said intervener and against

said board on said warrants in the sum of $401 and costs, and on the same day said bank filed a motion for a new trial, which was overruled, and exceptions saved, and has brought the case before us by petition in error and case-made for review.

*Robberts & Curran* and *F. L. Boynton*, for plaintiffs in error.

*P. S. Nagle* and *W. A. McCartney*, for defendants in error.

Turner, J.  It is contended by the People's National Bank "that the People's Bank became the owner of the warrants by the estoppel of the transactions and events of June 10 to 14, 1899." We have carefully examined the record, and find that said transactions amounted to no more than separate sales, by Newers, Bickford, and intervener, each of his own stock in the People's Bank, save three shares retained by Bickford, to Stone, Boynton and Winkler; the resignation of the three former as president, cashier, and vice president, respectively, and a reorganization of said bank by the election of the new stockholders as a new board of directors, with Boynton, Stone, and Winkler as president, vice president, and cashier, respectively.

It is insisted, in effect:  (1) That the legal effect of the sale of their stock by Seay, Newers, and Bickford to Stone, Boynton, and Winkler was to vest in the three latter title to all the assets of the People's Bank; (2) that the legal effect of Seay being a director at the time of said sale was to charge him with constructive notice that his lost warrants were being carried on the books of said bank as a part of its assets, the title to which also passed at the same time;  (3) that title to the warrants in question being thus in its said new stockholders, Seay is estopped from asserting title thereto as against the People's Bank or its successor, the People's National Bank.

1.  The title to the corporate assets is in the corporation. Neither the legal nor equitable title thereto is in its stockholders. The ownership of shares of stock is but the ownership of the right to participate from time to time in the management and net profit of the business.  26 Am. & Eng. Enc. of Law, 899.  In *Gibbons v.*

*Mahon,* 136 U. S. 557, 10 Sup. Ct. 1058, 34 L. Ed..525, the court said:

"The distinction between the title of a corporation and the interest of its members or stockholders in the property of the corporation is familiar and well settled. The ownership of that property is in the corporation, and not in the holders of shares of its stock. The interests of each stockholder consist in the right to a proportionate part of the profits whenever dividends are declared by the corporation, during its existence under its charter, and to a like proportion of the property remaining, upon the termination or dissolution of the corporation, after payment of its debts. *Van Allen v. Nolan,* 70 U. S. (3 Wall.) 573, 584, 18 L. Ed. 229, 234; *Delaware Railroad Tax,* 85 U. S. (18 Wall.) 206, 230, 21 L. Ed. 888, 896; *Tennessee v. Whitworth,* 117 U. S. 129, 136, 6 Sup. Ct. 649, 29 L. Ed. 830, 832; *New Orleans v. Houston,* 119 U. S. 265, 277, 7 Sup. Ct. 198, 30 L. Ed. 411, 415."

Therefore the transaction above referred to had no such effect, as claimed, upon the assets of the People's Bank as to pass the title thereto to the new set of stockholders, but the same remained the property of the bank as though nothing had happened.

2. It being thus determined that the title to the assets of the bank remained in the bank and did not pass by the sale of its stock to the new set of stockholders, it becomes immaterial to discuss to what extent Seay as a director was chargeable with knowledge of what the books of the bank contained. We think it sufficient to say, as was said by Brewer, J., in *First National Bank v. Drake,* 29 Kan. 329, 44 Am. Rep. 646, that public policy "sustains the doctrine of imputed knowledge on the part of the directors only so far as will protect the dealings of third parties with the bank, or will prevent the bank from suffering through inattention or wrong from the directors themselves," and has no application in this case. *Bryant v. Hawley,* 7 Cal. App. xiii, 94 Pac. 850. While the assets so remained the property of the People's Bank, intermingled with which were the warrants in question, to wit, on July 20, 1899, one of the new management of said bank, finding them among its assets, sued the board of county commissioners of Kingfisher county thereon. Pending suit a year elapsed,

after which intervener Seay set up title thereto, claiming them as his long-lost warrants, and which is not denied.   On March 25, 1901, the People's Bank having increased its capital stock, and having been converted into a national bank, intervened and claimed said warrants by virtue of its succession and said alleged estoppel. The effect of the plea is to assert as a proposition of law that a stockholder and director in a bank, having lost a portion of his personal property, which has, without his actual knowledge, become inadvertently intermingled with the assets of the bank, and as such appear upon its books, is estopped to assert title thereto as against the bank, after he has parted with his stock therein, where his assignee makes no complaint.   To this we cannot assent. We can see how Stone, to whom Seay sold his stock, might complain and sue Seay, and perhaps recover in a proper action the difference between the value of his stock in the financial condition the bank was with the warrants added to its assets and what it was with them subtracted therefrom, or how he might sue to rescind the sale of the stock on the ground of mistake, but we can see no privity between Seay and the bank upon which the latter can predicate an estoppel and claim title to the warrants in itself.

Finding no error, the judgment of the lower court is affirmed.

All the Justices concur.