## In re ESTATES OF HARKNESS et al.

Nos. 12152, 12153, 12154—Opinion Filed Sept. 20, 1921.

(Syllabus.)

**1. Taxation — Inheritance Tax—Power of State.**

A state has an inherent power to impose an inheritance tax.

**2. Same — Regulatory and Revenue Raising Powers.**

The power to impose an inheritance tax inheres in both the regulatory and revenue raising power of a state.

Sovereign regulation of inheritances and successions to estates is not essential to the existence of government, but sovereign control and protection in such matters is conducive to a higher and better state of government than could be attained without such control and protection, and to such extent the power to control is inherent. Likewise, if sovereign protection be necessary in order to attain a higher and better

state of government, then the power to raise revenue for the expense of protection is inherent in the sovereignty which affords the protection.

**3. Same—Constitutional Provisions.**

Under article 7 of the Constitution of Oklahoma the state has power to regulate inheritances, and under article 10 of the Constitution has power to raise revenue by an inheritance tax.

It may regulate inheritances without imposing any tax, or it may impose the tax solely as a revenue raising measure independent of the right to inherit, or it may regulate inheritances in part by directly taxing the right to inherit, making the payment thereof a condition precedent to the right to inherit.

**4. Same—Nature of Tax—"Subjects of Taxation."**

Whether an inheritance tax constitutes a price paid for the privilege of inheriting or whether it be a property tax depends upon constitutional and statutory provisions and the conditions imposed by the taxing act.

Section 13, art. 10, of the Constitution authorizes the state to select its "subjects of taxation"; section 12 of said article defines the "subjects of taxation" which the state may select and names inheritances as one of the "subjects"; section 22 of said article authorizes the classification or arrangement of "subjects of taxation" into classes for the purpose of assessment and taxation and the adoption of different means or measures for ascertaining the amount of tax upon any specific "subject"; and section 5 of said article provides that taxes shall be uniform upon "subjects" of the same class.

**5. Taxation—Uniformity Clause of Constitution.**

The uniformity clause of the Constitution is not violated by a different rate upon different "subjects," but is violated where a different rate or measure is applied to "subjects" of the same class.

**6. Same—Validity of Inheritance Tax.**

Inheritances being a rightful "subject of taxation," an inheritance tax is sustainable so far as the rate is concerned if, in computing the amount of tax, the same rate is levied upon or same measure applied to all inheritances.

**7. Same—Statutes—Nature of Tax.**

Under section 10, ch. 162, Session Laws 1915, as amended by section 7, ch. 296, and section 8, ch. 162, Session Laws 1915, as amended by section 5, ch. 296, Session Laws 1919, heirs' may be deprived of their right to inherit unless the inheritance tax is paid, and it is, therefore, equivalent to a price paid in order to inherit.

**8. Same—Jurisdiction of State—Residence of Decedent and Heirs and Situs of Property and Probate of Will in Foreign State.**

Where the decedent was a resident of the state of New York and his property, consisting of certain certificates of stock in corporations foreign to this state, was actually situated in New York and was willed by decedent to his heirs, who are residents of New York, his will admitted to probate under the laws of New York and his property distributed to his heirs under the terms of said will according to the laws of New York by order of the surrogate court of New York, this court is without jurisdiction to interfere with said order.

**9. Courts—"Jurisdiction"—Source and Extent—State Courts.**

Jurisdiction means authority over the matter to be determined; it means power to hear. to determine, and to enforce judgment.

The extent of jurisdiction of state courts is ascertained from two sources, namely, from the power conferred by express or implied provisions of state law and by express or implied limitations of federal law.

**10. Taxation—Inheritance Tax—Jurisdiction of Court.**

To give a court authority to impose an inheritance tax it must have jurisdiction of the parties or of the subject-matter.

**11. Taxation—Situs of Property Within State—Necessity.**

Property must have either an actual or constructive situs within a state in order to give it a taxable situs therein.

A state has power to fix the time at which property within its jurisdiction may acquire a taxable situs, but it cannot fix the taxable situs of a thing which has never come into the state and over which it is without power to control.

**12. Taxation—Source of Power to Tax.**

It is in the obligation of a state or sovereign government to protect its citizens in the enjoyment of their property and their rights that the power to tax them inheres.

**13. Taxation—Inheritance Tax—Construction of Statutes.**

Section 1, ch. 162, Session Laws 1915, provides: "A tax is hereby laid upon the transfer to persons or corporations of property or any interest therein or income therefrom. When the transfer is of tangible property in this state made by any person, or of intangible property made by a resident of this state at time of transfer: First. By will or the intestate laws of this state." etc. To authorize the enforcement of the foregoing statute the transfer must be of tangible property in this state made by any person, or intangible property made by residents of this state at the time

of the transfer. and be made by will or the intestate laws of this state.

**14. Same—State Jurisdiction—Transfer of Corporation Stock.**

Chapter 162, Session Laws 1915, as amended by chapter 296, Session Laws 1919, and section 6193, Revised Laws of 1910, held to be valid and enforceable as to transfers of all tangible property in this state made by **any person** and as to all intangible property made by a **resident** of this state at the time of the transfer, and made by will or the intestate laws of this state.

The terms of the foregoing statute do not include the transfer of certificates of stock in a foreign corporation, where such transfer is made in another state and the certificates of stock situated in another state, and where the decedent owner of such stock was a resident of another state and the heirs thereto were residents of another state, and the transfer made by will or intestate laws of another state.

Error from District Court, Oklahoma County; Edward D. Oldfield, Judge.

Three separate actions by the State and the State Auditor, on relation of the Attorney general. to enforce inheritance tax against the respective estates of William L. Harkness. Charles W. Harkness. and Harry S. Harkness, deceased. From adverse judgments, plaintiffs bring error. Affirmed.

S. P. Freeling. Atty. Gen., and C. W. King, Asst. Atty. Gen., for the State Auditor.

Ames, Chambers, Lowe & Richardson, for the executors of William L. Harkness, deceased, and Harry S. Harkness, deceased.

Murray, Prentice & Aldrich, for the executors of Wm. L. Harkness, deceased, and Charles W. Harkness, deceased.

Nicoll, Anabel, Fuller & Sullivan, for the executors of Harry S. Harkness, deceased.

HARRISON, C. J. This appeal involves the validity of our inheritance tax laws, viz., chapter 162, Session Laws 1915, as amended by chapter 296, Session Laws 1919: the direct question being whether the state can impose an inheritance tax upon the right of nonresident heirs to inherit shares of corporate stock, owned by a nonresident decedent in a foreign corporation doing business in this state. For example: Certain foreign corporations. organized under the laws of and domiciled in other states, are each doing business in this state and have corporate property located within the state. A resident of another state owns shares in such corporations. He dies. His heirs reside in the state of his residence and inherit his property, including such shares of stock, under the laws of the state of his and their

residence. Question: Can this state impose a tax upon said shares or upon the right of the heirs to inherit said shares of stock, the certificates of same having been kept in the state of his residence and having been transferred to him on the corporate books of a corporation chartered and domiciled in a foreign state? A determination of this general question necessitates a determination of certain other basic questions presented by counsel.

That a state has the power to impose an inheritance tax is now quite uniformly recognized. 26 R. C. L. 198; 37 Cyc. 1554; In re Sanford Estate (Neb.) 133 N. W. 870; Matter of McPherson, 104 N. Y. 306, 58 Am. Rep. 502; In re McKenna's Estate (S. D.) 130 N. W. 33; Booth's Ex'r v. Commonwealth ex rel. Jefferson County Attorney (Ky.) 113 S. W. 61; Corporation Com. et al. v. Dunn et al. (N. C.) 94 S. E. 481. So that phase of the question may be considered as definitely settled.

Another phase, however, has been the subject of much discussion, namely, whether the power to regulate inheritances is a power essentially inherent in government itself, or whether it is merely the exercise of a regulatory power which the sovereignty has arbitrarily assumed and arbitrarily exercises; but the reasoning in the decisions sheds but little light upon the question. They appear, for the most part, to be conclusions based upon some evolved theory, rather than results growing out of actual conditions. Looking at the question for what it actually is, it cannot be said that sovereign regulation of succession to estates is absolutely essential to the existence of government, but it may be said as a truth that sovereign control of such matters is conducive to a higher and better state of government than could be attained without such control, and to such extent the power to control or regulate is essential and inherent.

For illustration, the right of one's children or nearest relatives to inherit his estate is probably as nearly a natural right as any other that is not an absolute natural right. It is certainly a much stronger right than others possess, and yet should a person possessed of an estate die, though a half dozen dependent minor children survive him and though they may have undergone many hardships and privations in order that their father might accumulate an estate for them, they cannot succeed to such estate in the absence of some law defining and protecting their rights and regulating their succession thereto. In the absence of some regulatory law, strangers might by force or otherwise take possession of the estate and appropriate it to their own use, to the exclusion of the children; or one child might take possession of the entire estate, to the exclusion of all the rest. Hence, in order to avoid conditions so manifestly unjust and so unnatural, and to avoid disturbance and violation of other laws which would inevitably grow out of such conditions, it is necessary that the more rightful heirs be protected in their rights by the sovereignty itself, and to the extent that sovereign protection is necessary, the power to regulate is inherent. Likewise, if sovereign protection be necessary in order to attain a higher and better and happier state of government, then the power to raise revenue for the expense of protection is inherent in the sovereignty which affords protection.

Another phase has been the subject of much discussion, namely, whether the power to levy an inheritance tax comes from the taxing power of the state or from its regulatory power. Many authorities have been cited on this phase of the question in the case at bar; some holding that it comes from the power to regulate; others that it is derived from the power to raise revenue. It is not necessary in the case at bar to say whether we agree with the reasoning in either line of decisions. The proper conclusion, however, seems to have been reached in some of them.

But, as to the case at bar, it may suffice to say that, under the Constitution of Oklahoma, the state has both the power to regulate inheritances and also the power to raise revenue by an inheritance tax. Section 13, art. 7, Constitution of Oklahoma; section 12, art. 10, id. Hence, it has the double or two-fold authority to impose an inheritance tax. It has the power to regulate inheritances and the power to raise revenue by an inheritance tax. It may regulate inheritances without imposing any tax whatever, or it may impose a tax solely as a revenue raising measure independent of the right to inherit, its payment or nonpayment not being a condition precedent to the right to inherit. Or it may regulate inheritances in part by directly taxing the right to inherit and making the payment of such tax a condition precedent to the right to inherit, and its nonpayment a forfeiture of such right. As to which of these methods the state will be deemed to have adopted depends upon the provisions and conditions of the taxing act in question, which we will examine later on.

Another phase of the question is presented by defendants in error, and a number of authorities cited in support of the proposition, to wit:

"Unless a state inheritance tax is sustainable as a price paid for the exercise of a

privilege, it violates the provisions of the state Constitution requiring equality and uniformity in taxation."

As to the inheritance of property within this state, whether it be tangible or intangible, if it be inherited or inheritable under the laws of this state, the foregoing proposition, unqualified, cannot be sustained. The truth of the proposition in any case depends upon the Constitution and statutes under which such tax is levied and the conditions imposed by the taxing act. Under the revenue provision of our Constitution, section 12, art. 10, inheritances are made a rightful subject of taxation and may be taxed as any other rightful subject for revenue purposes solely. Therefore, the problem presented in the proposition above is solved by the Constitution and statutes. The Constitution authorizes the state, through its Legislature, to select its subjects of taxation; that is, it leaves it to the state to select what subjects it will tax, and expressly enumerates certain subjects which may or may not be taxed. It also authorizes the state to classify the subjects of taxation; that is, to arrange them into classes for the purpose of assessment and taxation. It further authorizes the adoption of different means or measures for ascertaining the amount of tax to be assessed against each subject; but it provides also that taxes must be uniform upon the same class of subjects, uniform upon subjects of the same class.

Section 13, art. 10, of the Constitution provides: "The state may select its subjects of taxation." And section 12, art. 10, defines the "subjects" which the state is authorized to select for taxation, to wit:

"The Legislature shall have power to provide for the levy and collection of license, franchise, gross revenue, excise, income, collateral and direct inheritances, legacy, and succession taxes; also graduated income taxes, graduated collateral and direct inheritance taxes; graduated legacy and succession taxes; also stamp, registration, production or other specific taxes."

Section 22, art. 10, authorizes the classification or arrangement of subjects for the purpose of taxation: It reads:

"Nothing in this Constitution shall be held, or construed, to prevent the classification of property for purposes of taxation; and the valuation of different classes by different means or methods."

And section 5, art. 10, provides:

"Taxes shall be uniform upon the same class of subjects."

Each of the above "subjects" constitutes a distinct separate "subject of taxation." The state is not bound to tax any of them; that is, the provision is not mandatory; but the state may, if it chooses, select and tax any or all of the above "subjects."

Thus it is seen that the state may select the "subjects" which it chooses to levy a tax upon, may arrange them into classes for the purpose of assessments and taxation, and may adopt appropriate, fair, and practicable means or measures for ascertaining the amount of taxes which each "subject" must bear; but when the "subjects" are once thus classified, the rate then must be uniform upon subjects of the same class; the measure or gauge adopted for ascertaining the amount must be uniformly applied upon subjects of the same class. Mudeking v. Parr (Minn.) 123 N. W. 408; Mayor v. Weed (Ga.) 11, S. E. 235, 8 L. R. A. 270; Newport News v. Newport News (Va.) 40 S. E. 645.

The uniformity clause is not applicable except where there is a different rate or measure applied to subjects of the same class. It does not mean that the same rate must be levied upon all subjects; it does not mean that the same rate must be levied upon licenses, franchises, incomes, and inheritances that is levied upon property, nor that it shall be the same upon any two distinct "subjects" of taxation; it does not mean that each "subject" of taxation must bear the same rate that all other "subjects" bear in order to comply with the uniformity clause. To apply the same rate or measure to all "subjects" would be impracticable in some cases and impossible in others. Besides, there might be a just reason for levying a different rate or applying a different measure to licenses, in order to ascertain the amount of tax due, from the measure applied or the rate levied upon property. There might also be a just reason for a different rate upon inheritances from that levied either upon licenses or upon property, or upon any other distinct "subject" of taxation. Therefore, an inheritance tax rate may not be the same as the rate upon any other "subject" and yet not violate the uniformity clause nor constitute a price paid for the privilege of inheriting in order to be sustained.

Inheritances being a rightful subject of taxation, an inheritance tax may be sustained as far as the rate is concerned if, in computing the amount of tax, the same rate is levied upon, or the same measure applied to all inheritances, and such a tax will not constitute a price paid for the privilege of inheriting unless made so either by implication or by express provisions of the taxing act.

As to what was intended by our Legislature and as to what should be the correct interpretation of our statute, the following provisions will enlighten us: Section 10, ch. 162, Session Laws 1915, and section 7, ch. 296, Session Laws 1919, which is amendatory of said section 10, Session Laws 1915; both contain the following provision, referring to the executor or administrator of an estate, to wit:

"He shall not deliver or be compelled to deliver any specific legacy or property subject to the tax under this act to any person until he shall have collected the tax thereon."

Likewise section 5 of chapter 296, Session Laws 1919, and section 8, ch. 162, Session Laws 1915, of which said section 5 is amendatory; both contain the following provision:

"The tax shall be paid to the State Treasurer, who shall give, and every executor, administrator or trustee shall take duplicate receipts from him for such payments, one of which he shall immediately send to the State Auditor, whose duty it shall be to charge the treasurer so receiving the tax, with the amount thereof, and to seal said receipt with the seal of his office, and countersign the same and return it to the executor, administrator or trustee, whereupon it shall be a proper voucher in the settlement of his accounts: but no executor, administrator or trustee shall be entitled to a final accounting of an estate, in settlement of which a tax is due under the provisions of this act, unless he shall produce a receipt so sealed and countersigned by the State Auditor or a copy thereof certified by him (or unless a bond shall have been filed as hereinafter prescribed.)".

While the above statutes do not in express words declare that "the tax shall be a price paid for the privilege of inheriting", or that "it shall be a price paid in order to inherit", yet the language seems to give it an equivalent effect. It plainly says in each act: "That no executor or administrator or trustee shall be entitled to a final accounting of an estate in settlement of which a tax is due under the provisions of this act unless he shall produce a receipt so sealed," etc. And also in each act: "He shall not deliver or be compelled to deliver any specific legacy or property subject to the tax under this act to any person until he shall have collected the tax thereon." This clearly implies that the heirs may be wholly deprived of the inheritance unless the tax is paid. This appears to have been the theory upon which the case was tried below and upon which it has been briefed and argued in this court.

The next question is: Have these certificates of stock a "taxable situs" in this state? It conclusively appears that the certificates themselves have never had an "actual situs" within this state; that they have never, at any time, been physically kept within the state, nor has the decedent or any of his heirs ever been residents of the state of Oklahoma. The decedent and his heirs were residents of the state of New York; his estate descended to his heirs under and according to the laws of New York; his heirs inherited under the laws of said state; the right to inherit was given them by, and the process of inheriting was completed under, the laws of New York, wholly independent of the laws of Oklahoma. Under these conditions, the state of Oklahoma is without any jurisdiction in the premises. When the order of distribution was made by the surrogate of New York, all property belonging to decedent's estate and actually situated within said state and under the jurisdiction of said state passed to his heirs, and this state is without any power and this court without any jurisdiction to interfere with such order. The property being actually situated in New York, this state has no jurisdiction over it, and the decedent and his heirs being actual residents of said state, this state has no jurisdiction over them. This court is wholly without process through which to acquire jurisdiction over either the heirs or the property in question.

Mr. C. W. King, Assistant Attorney General, on behalf of the state, contends that an owner of shares of stock in a corporation has a pecuniary interest in the corporate property of a corporation, and that the corporation itself having property actually situated within this state renders the transfer of such pecuniary interest taxable by the state. This proposition having been so earnestly and ably presented, many authorities having been cited in support thereof, we deem it but proper to review the argument and authorities cited.

The contention of the Attorney General is obviously true where the decedent owner of shares was a resident of this state, or where the heirs are residents of this state, or where the shares themselves are physically situated within this state, and possibly true as to domestic corporations where neither the shares are within the state nor the heirs nor the decedent residents of the state. Some courts have inclined to this doctrine upon the theory that the domicile state has a voice in the

transfer of stock of the domestic corporation, but this doctrine is not involved in this case.

The Attorney General suggests, also, "that there is a distinction between the situs of property for managerial purposes and the situs of property for taxation purposes", citing Adams Express Co. v. Auditor, 166 U. S. 185, 41 L. Ed. 956, and quoting the following:

"It may be true that the principal office of the corporation is in New York, and that 'for certain purposes the maxim of the common law was 'mobilia personam sequunter,' but that maxim was never of universal application, and seldom interfered with the right of taxation. Pullman's Palace Car Co. v. Pa., 141 U. S. 18-22."

As to the above case it may be pertinent to say that the tax under consideration therein was wholly different in character from the tax under consideration here. The question under consideration in that case and the accompanying similar cases reported in 41 L. Ed. was the right of a state in assessing a direct property tax upon the corporate property of the corporation itself to include, in the assessment, the value of the franchises and other intangible values of the corporation as items of value in ascertaining the assessable value of all of the corporate property. The states in that group of cases each had actual jurisdiction of the franchises and other intangible values they sought to assess. The values which each state sought to assess were actually within the state, and the tax was upon the corporation. Hence, the questions involved and decided in those cases are not decisive of the question involved in this case.

As to what was said in regard to the maxim, "mobilia personam sequunter," in the above case, it is true, as said by the very learned jurist, that this doctrine " has never been of universal application"; and we might add that if such doctrine is correctly applicable in any case, it is only in federated municipalities; only in centralized governments where the control power has jurisdiction over everything within, and never applicable in a dual government like ours, where each state is an independent sovereignty having exclusive jurisdiction over matters within its governmental province, but with express limitations as to matters within the jurisdiction of another state. Furthermore, the principle of the above maxim is not involved in the case at bar. The question here is not whether "movables follow the person", but whether this state or some other state has jurisdiction over the subject-matter. The following cases are cited by the Attorney General as supporting the contention that this state has power to impose the tax under consideration, to wit: Estate of Emily Fitch, 160 N. Y. 87; Estate of Julia Thayer, 193 N. Y. 430; Matter of Cooly, 186 N. Y. 220; Estate of Palmer, 183 N. Y. 238; Estate of John Brez, 172 N. Y. 609; Estate of Josephine L. Newcomb, 71 App. Div. (N. Y.) 606; Moody v. Shaw, 173 Mass. 375. 53 N. E. 892; Kingsberry v. Chapin, 196 Mass. 533, 82 N. E. 700; Gardner v. Carter, 74 N. H. 509, 69 Atl. 939; In re Cushing, 82 N. Y. Supp. 795; Estate of Lena McMullen, 187 N. Y. Supp. 248; People ex rel. Hatch v. Reardon, 184 N. Y. 431. But the courts in none of those cases were confronted with identical conditions involved in the case at bar, nor were they governed by the exact principle contended for by the Attorney General.

In Re Estate of Josephine L. Newcomb, supra, the tax was not an inheritance tax, but a tax upon the transfer of the corporate stock. The transfer in question was actually made in New York; the stock in question being that of a domestic corporation of New York.

In Re Estate of Emily Fitch, supra, the tax was also on the transfer of stock of a domestic corporation in New York; not an inheritance tax, but a tax upon the transfer itself.

In the Matter of Cooly, supra, this was likewise a tax upon the transfer made in New York; the stock in question being that of a corporation jointly chartered by both the state of New York and the state of Massachusetts, being a domestic corporation as to each state.

In Re Estate of Palmer, supra, the tax was upon the transfer of the stock of a domestic corporation.

In Estate of John Brez, supra, was involved a transfer tax upon succession; the property being situated in New York and the decedent a resident of New York.

In the case of People ex rel. Hatch v. Reardon, supra, the language of the opinion discloses the question involved, to wit:

"It imposes a tax on all sales. or agreements to sell, or memoranda of sales or deliveries or transfer of shares of certificates of stock in any domestic or foreign corporation."

The sale of stock in question was made in the state of New York.

In Estate of Julia Thayer, supra, the court said:

"Both companies are incorporated under the laws of Massachusetts as well as under the laws of New York"—the tax being upon the transfer of corporate stock.

In Re Cushing Estate, supra, was involved a tax upon national bank stock. Paragraph two of the syllabus discloses the principle which governed the court, to wit:

"A corporation created and organized under the federal laws is a domestic corporation in each state in which it transacts business."

In Moody v. Shaw, supra, the nature of the question involved is seen from the language of the court's opinion:

"The questions presented are, whether, first, shares of stock in corporations organized under the laws of this commonwealth, and, secondly, shares of stock in national banks organized under the laws of the United States and located in this commonwealth, and, thirdly, shares of stock in the Boston and Albany Railroad Company, a corporation which has franchises from this commonwealth and the state of New York, are subject to collateral inheritance tax."

In Kingsberry v. Chapin, supra, the tax was upon the transfer of stock in a domestic corporation.

In Re Estate of Lena McMullen, supra the following sentences in the opinion destroy the application of the case to the case at bar, to wit:

"The stock certificate was actually located in this state at the time of the death of this testatrix, and therefore was property taxable within our jurisdiction. * * * It must be remembered, however, that this subdivision does not apply to all foreign corporations, but only to those owning realty in this state."

In Gardner v. Carter, supra, the question was whether the probate court had jurisdiction to impose a tax on shares in a domestic corporation owned by a nonresident decedent.

It is observed that in each of the above cases the state which sought to impose the tax had some actual grounds upon which to base its jurisdiction. In each case the tax was either upon the transfer of stock of a domestic corporation, where the transfer actually took place within the state, or where the certificates were actually kept within the state, or upon the transfer of stock to heirs where the decedent or heirs were residents of the state. None of these elements are present in the case at bar.

In this case the stock is not that of a domestic corporation; the tax is not upon the transfer of the stock, but upon the right of heirs to receive it. The stock certificates were not situated in this state; their transfer was not made in this state; the decedent was a nonresident of this state; the heirs were nonresidents, and their right to inherit was given them by the state of their residence. We can see no element in the case at bar which gives this state jurisdiction to impose this tax. The state has no sovereign authority over the thing herein sought to be regulated, namely, the right of the heirs to inherit, the right to receive the property in question, and it must be borne in mind that the tax herein is no upon the property of decedent, but upon the right of his heirs to inherit the particular property in question, the specific certificates of stock. This court is without jurisdiction — without sovereign power to control the descent.

Jurisdiction means authority over the matter to be determined. It means power to hear, to adjudge, and to enforce judgment. The extent of jurisdiction of state courts is to be determined from two sources, viz., from the power conferred by express or implied provisions of state law, and by express or implied limitations of federal law. The courts of one state cannot invade the exclusive province of, nor control the judgments of, courts of another state without transcending federal limitations.

These conclusions find support in the following authorities: In re Hatch (Cal.) 99 Pac 398-9; People ex rel. Raymond v. Talmadge (Ill.) 61 N. E. 1049; Menard v. McDonald (Tex.) 115 S. W. 63; Rockland v. Hurricane Isle (Me.) 76 Atl. 286-7. Smith v. Potter (Neb.) 137 N. W. 854; 2 Cooley on Taxation, page 978; Phelps v. Mutual Life Association (Ky.) 61 L. R. A. 717; Dauphin v. Ellis (La.) 32 South. 335-548; Johnson v. McKinnon (Fla.) 45 South. 23-25; 2 Words and Phrases, subject Jurisdiction.

As to jurisdiction to assess an inheritance tax, Gleason and Ottis on Inheritance Taxation (2d Ed.) page 74, says:

"The court which undertakes to assess an inheritance tax must have jurisdiction of the parties or of the subject-matter. Where the court does not acquire such jurisdiction no tax can be assessed, notwithstanding the requirements of the statute."

In Oakman v. Small (Ill.) 118 N. E. 775-6, the court had under consideration the question of power to impose an inheritance tax; the case involving the identical principle in-

volved in the case at bar. In paragraphs 2 and 8 of the syllabus the court said:

(2) "Jurisdiction includes jurisdiction of the person and of the subject-matter, which is jurisdiction of the class of cases to which the particular case belongs, and it cannot be conferred by consent, or failure to interpose an objection."

(8) "As the county court to assess an inheritance tax must have jurisdiction either over the beneficiary or the property, an order assessing an inheritance tax, in so far as it relates to shares of stock of foreign corporations, passing to nonresidents by virtue of the will of a decedent probated in a foreign state based on the fact that such foreign corporations owned property in Illinois, is void, and may be collaterally attacked."

In Welch v. Burrill, (Mass.) 111 N. E. 7:4 and State v. Dunlap (Idaho) 156 Pac. 1141, the decisions are based upon the identical principle.

The decedent and the heirs being residents of the state of New York, and the specific articles of property being actually situated in New York, and such property having passed to the heirs under the laws of New York by a judgment of the surrogate court of said state, this state cannot control nor interfere with said judgment without violating the "Full Faith and Credit Clause" of the federal Constitution. See Tilt v. Kelsey, 207 U. S. 43, 52 L. Ed. 95.

In the above case the question was the conclusiveness of an order of probate of a will under the New Jersey law and practice by the court of that state as against a subsequent assessment of a succession tax upon the personal property of decedent by the state of New York. The opinion was rendered by Mr. Justice Moody, the subject comprehensively reviewed and the question definitely settled. The conclusion in said case was reached notwithstanding the fact that the state of New York disputed the jurisdiction of the state of New Jersey on the ground that the decedent was a resident of the state of New York. In the case at bar there is no dispute as to the residence of the decedent or the heirs, or the actual situs of the specific items of property, nor as to any other fact essential to complete jurisdiction of the surrogate of New York.

It is pointed out by the Attorney General that there is a distinction between the situs of property for managerial purposes and its situs for the purpose of taxation. We are not disposed to dispute the truth of this proposition, but the full force and truth of the proposition does not give the property in question a taxable situs in this state. Property must have either an actual or constructive situs within a state in order to give it a taxable situs. It must be either one or the other in order to give the state power to control or to impose upon the state the obligation of sovereign protection. In the case at bar, this state is without power to control the right of these heirs to inherit the particular items of property in question, and it is totally absolved from any obligation to extend sovereign protection to them in the exercise of their right to inherit.

It is also pointed out by the Attorney General that a state has the right to fix the situs for taxation. The truth of this proposition is also admitted; that is, where the property is situated within the state so as to give the state jurisdiction. A state has power to fix the time at which property within its jurisdiction may acquire a taxable situs. It has power to say how many months or weeks will be required for property coming into the state to acquire a taxable situs, but it cannot fix the taxable situs of a thing which has never come into the state; a thing over which it has no jurisdiction; a thing over which it is powerless to control and under no obligation to protect.

It should never be lost sight of that the underlying principle from which a state derives its power to tax is its obligation to protect its citizens in the exercise and enjoyment of their property and their rights. This is the basis in which the power to tax inheres. Section 1, art. 2, Constitution of Oklahoma. Hence, we are not inclined to the doctrine announced in Hatch v. Reardon. 184 N. Y., supra, that:

"All taxation is arbitrary, for it compels the citizen to give up a part of his property."

Certain fundamental principles seem to have been overlooked by the court—principles which if kept in mind would help to clarify a great deal of the confusion that is found among the decisions on taxation, viz., "that all just government is derived from the consent of the governed"; "that the primary purpose of government is protection to the governed;" that the raising of revenue is an inevitable consequence of protection, and that in assuming the obligation of government the obligation to raise revenue is voluntarily assumed by the governed. Evidently the court in Hatch v. Reardon, supra, either overlooked these

fundamental principles of our form of government or overlooked the inconsistency between the two statements found in the same opinion, namely, "all taxation is arbitrary" and the statement that "taxation is a necessary attribute to sovereignty." It must be borne in mind that the sovereignty in our government is the governed, and not the government. The raising of revenue by taxation being assumed by these citizens of the state, the governed, for the protection of themselves, their property, and their rights, the protection of citizens of another state when under the jurisdiction of another state, not being assumed, it necessarily follows, from the very nature of our dual form of government and the distribution of powers under our federal Constitution, that authority over citizens of another state and power to control them or their property or their rights, being forbidden by the federal Constitution, that authority over citizens of another state and power to control them or their property or their rights, being forbidden by the federal government, are necessarily disclaimed by the state.

Recognizing these principles, one state has no power to enforce a tax upon the rights of citizens of another state to inherit property situated in another state, the devolution of which is completed under the laws of such other state.

In speaking of the distribution of powers under the federal Constitution and the limitations upon one state to tax the property of a citizen of another state, Mr. Chief Justice White, in United States v. Bennett, 232 U. S. 299, 58 L. Ed. 612, said:

"It is a settled rule of constitutional law that the power to tax depends upon jurisdiction of the subject-matter of the tax. * * * State taxing power is based on the limitations on state authority to tax, resulting from the distribution of powers ordained by the Constitution. * * * The application to the states of the rule of due process relied upon comes from the fact that their spheres of activity are enforced and protected by the Constitution, and therefore, it is impossible for one state to reach out and tax property in another without violating the Constitution, for the power of one ends where the authority of the other begins."

The specific property herein sought to be taxed, namely, the certificates of stock, was situated in New York, hence, in the language of the learned jurist in the above case, "it is impossible for this state to reach out and tax the property in another state."

It is contended by the Attorney General, however, that the property herein transferred consists of the pecuniary interest hich the decedent shareholders owned in the corporate property located in this state. It is unnecessary for us to discuss the various conflicting theories, advanced by courts and text-writers as to the exact status of a shareholder of corporate stock with reference to the corporate property itself. Whether such theories be correct or not, we should not overlook a material substance in the pursuit of a theory. The actual fact is that certificates of stock have a tangible form; they have a salable value, are bought, sold, and transferred for a consideration as specific articles of personal property, regardless of any intangible pecuniary interest which the shareholder may or may not have in the corporate property.

This court has said in Peoples Nat. Bank v. Board of Com., 24 Okla. 145, 104 Pac. 55:

"The title to the corporate assets is in the corporation. Neither the legal nor equitable title thereto is in its stockholders. The ownership of shares of stock is but the ownership of the right to participate from time to time in the management and net profit of the business. 26 Am. & Eng. Enc. of Law. 899. In Gibbons v. Mahon, 136 U. S. 557, 10 Sup. Ct. 1058, 34 L. Ed. 525, the court said: 'The distinction between the title of a corporation and the interest of its members or stockholders in the property of the corporation is familiar and well settled. The ownership of that property is in the corporation, and not in the holders of shares of its stock. The interests of each stockholder consist in the right to a proportionate part of the profits whenever dividends are declared by the corporation during its existence under its charter, and to a like proportion of the property remaining upon the termination or dissolution of the corporation, after payment of its debts.' "

The same principle governed this court in Board of Equalization v. First State Bank, 77 Okla. 291, 188 Pac. 115. We have no reason for departing from the above views. Furthermore, our statutes, in section 1237, Revised Laws of 1910, povide:

"All corporations for profit must issue certificates of stock when fully paid up, signed by the president and secretary. Whenever the capital stock of any corporation is divided into shares, and certificates therefor are issued, such shares of stock are personal property and may be transferred by endorsement."

Hence, under the decision of this count, under the express definition of our statute

and under the actual facts as to the material substance, certificates of stock are "personal property." Therefore, the property sought to be taxed in this case was personal property situated in the state of New York. But it is contended that the tax is laid, not alone upon transfer of stock, but upon the transfer of **property or any pecuniary interest therein,** and that a transfer of the stock is a transfer of the pecuniary interest which the stockholder owns in the corporate property, and that the transfer of such pecuniary interest is the thing which is made taxable under our statute. The statute itself, section 1, ch. 162, Session Laws 1915, provides:

"A tax is hereby laid upon the transfer to persons or corporations or property or any interest therein, or any income therefrom."

The above provision, standing alone, would seem to support the contention; but the same section of the statute further provides:

"When the transfer is of tangible property in this state made by any person, or of intangible property made by a resident of this state at time of transfer: First: by will or the intestate laws of this state. * * *"

The latter provision shows clearly what is meant in the first provision. The first provision would seem to lay a tax upon any property or interest therein, but this is qualified in the latter provision and clearly defined to be the transfer of tangible property in this state or of intangible property by a resident of this state at the time of the transfer by will or the intestate laws of this state. Hence, under the provisions of the statutes relied upon, the transfer of the specific items of property involved herein cannot be taxed by this state unless it is tangible property in this state or intangible property by a resident of this state and be transferred by will or the intestate laws of this state.

The conceded facts in this case take the property in question out of the meaning of the statute. By this view of the case we do not mean to hold that the taxing act, chapter 162, Session Laws 1915, as amended by chapter 296, Session Laws 1919, is unconstitutional or invalid, nor do we mean to say that section 6193, Revised Laws of 1910, under which the court in probate sought jurisdiction of the subject-matter, is unconstitutional or invalid. In our opinion said section 6193 is valid and said taxing act is valid, and each statute is valid as to all persons, property, and subject-matter over which the state has jurisdiction; but in our opinion the state has no jurisdiction over either the person, the property, or the subject-matter in either case involved in this appeal.

The issues presented to the trial court were that in each of the consolidated cases herein the State Auditor made application to the county court for the appointment of administrator to ascertain and determine the amount of tax to be collected in each case. The parties in each case herein appealed objected to the jurisdiction of the county court. The objection was overruled and the administrator appointed. and from such order of appointment an appeal was taken in each case to the district court of Oklahoma county, wherein the objection to the jurisdiction was renewed. The district court sustained the objection to the jurisdiction in each case, and ordered that the decree of the probate court appointing an administrator be reversed, and the application for appointment of such administrator for the purpose of ascertaining and collecting the inheritance tax sought to be levied in each case be denied. From said judgment of the district court an appeal was taken in each case to this court, where by agreement the three cases were consolidated.

The judgment of the district court is affirmed.

All the Justices concurring, except McNEILL. J., not participating.