In the Matter of the Transfer Tax upon the Estate of SAMUEL H. SPINGARN, Deceased.

THE COMPTROLLER OF THE STATE OF NEW YORK, Appellant; BERTHA SPINGARN and ARTHUR B. SPINGARN, as Executors, etc., of SAMUEL H. SPINGARN, Deceased, Respondents.

First Department, December 29, 1916.

**Tax** — transfer tax — assessment of tax on property subject to contin gent remainders — amendments to Tax Law by chapter 800 of the Laws of 1911, construed — duty of surrogate to determine portion of tax to be deposited with trust company.

As section 230 of the Tax Law, as it existed prior to the amendment made by chapter 800 of the Laws of 1911, requiring the transfer tax of property subject to contingent remainders to be appraised at its clear market value immediately upon the transfer, and requiring the tax to be imposed at the highest rate which would be possible upon the hap- pening of any of the contingencies, and that the tax shall be forthwith payable "out of the property transferred," often worked great injustice by diminishing the amount of property from which the life tenant or trust beneficiary received income, the Legislature by the amendment of 1911, intended to cure the former inequity of the act by providing in substance in section 241 of the Tax Law, as thus amended, that where such contingent remainders had been taxed at their highest value the State Comptroller and other specified officers to whom the tax is paid shall retain and hold to the credit of the estate so much of the tax assessed upon the contingent remainders as represents the difference between the tax at the highest rate and the tax upon such remain- ders which would be due if the contingencies had happened at the date of the appraisal and shall deposit the amount of the tax so

retained with trust companies, etc., and pay the interest thereof, when collected, to the executor or trustee of the estate to be applied by such person as provided by the decedent's will, etc.

It is the duty of a surrogate in assessing a transfer tax upon property subject to contingent remainders to determine and declare, when requested by the State authorities, what portion of the tax assessed should be deposited with the trust company to the credit of the estate. A surrogate should not refuse to make such determination upon the theory that it involves a purely ministerial act or mathematical calculation which cannot properly be imposed upon a judicial officer protected by the Constitution, for such determination is judicial in its character.

APPEAL by the Comptroller of the State of New York from an order of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 29th day of June, 1916, denying a motion to resettle a prior order fixing the transfer tax herein and also from the prior order entered in the office of said Surrogate's Court on the 25th day of February, 1916.

*Schuyler C. Carlton,* for the appellant.

———— ———— ————, for the respondents.

SCOTT, J.:

This is an appeal by the State Comptroller from an order of Mr. Surrogate FOWLER, one of the surrogates of New York county, denying a motion by said Comptroller for an order resettling an order fixing and assessing the transfer tax upon the transfers of property under the will of the above-named decedent. The amendment sought by means of the resettlement is the insertion of a clause which shall determine and declare what portion of the tax assessed should be deposited with a trust company, or companies or savings bank, to the credit of the estate, or secured by the deposit of bonds or other securities to await the vesting of certain remainders after the expiration of certain trust estates, as provided by section 241 of the Tax Law (Consol. Laws, chap. 60; Laws of 1909, chap. 62), as amended by Laws of 1911, chapter 800.

A brief history of the legislation upon the subject of the taxation of remainders where the person or persons in whom they will ultimately vest is uncertain, will illustrate the desirability of the clause which the State Comptroller wishes

to have inserted in the order.. Prior to 1899 the Tax Law, also known as the Transfer Tax Law (Gen. Laws, chap. 24 [Laws of 1896, chap. 908], § 230, as amd. by Laws of 1897, chap. 284), provided that "Estates in expectancy which are contingent or defeasible shall be appraised at their full, undiminished value when the persons entitled thereto shall come into the beneficial enjoyment or possession thereof   *   *   *." Under this statute it was well settled that future contingent estates were not taxable until they vested in possession and the beneficial owner could be ascertained. (*Matter of Vanderbilt*, 172 N. Y. 69, 71.)

In 1899, by chapter 76 of the Laws of that year, the Legislature so amended section 230 of the Tax Law as to make a radical change in the method of taxing future contingent estates. It was provided that "Whenever a transfer of property is made, upon which there is, or in any contingency there may be, a tax imposed, such property shall be appraised at its clear market value immediately upon such transfer, or as soon thereafter as practicable," and further that "when property is transferred in trust or otherwise, and the rights, interest or estates of the transferees are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, a tax shall be imposed upon said transfer *at the highest rate* which, on the happening of any of the said contingencies or conditions, would be possible under the provisions of this article, and such tax so imposed shall be due and payable forthwith, *out of the property transferred.*" It was further provided that, if it should appear when the remainder fell in that the tax had been assessed and collected at too high a rate, the excess should be refunded. (See, also, Tax Law, § 230, as amd. by Laws of 1900, chap. 658; Laws of 1901, chaps. 173, 493; Laws of 1902, chap. 496; Laws of 1904, chap. 758, and Laws of 1905, chap. 368; Tax Law of 1909, § 230.)

It was manifest that these provisions might and often did work great injustice to the life tenant or trust beneficiary, for there was deducted from the capital fund provided to produce the income a sum of money to pay a tax assessed upon the devolution of the estate upon others than himself. The

inequity of the act in this form was frequently commented upon in judicial opinions. (*Matter of Vanderbilt, supra; Matter of Brez,* 172 N. Y. 609; *Matter of Hoyt,* 44 Misc. Rep. 76, 78; *Matter of Zborowski,* 213 N. Y. 109, 116.)

In 1911 the Legislature, by chapter 800 of the Laws of that year, undertook to remove the injustice of the law, while at the same time securing the State against any damage of failing to receive the proper tax.

It amended section 230* by denominating the order fixing and assessing the tax as a "temporary" order, and amended section 241 so as to read (in part) as follows:

"Report of State Comptroller, payment of taxes; refunds in certain cases. The State Comptroller shall deposit all taxes collected by him under this article, except as hereinafter otherwise provided.  *  *  *

"Whenever the tax on a contingent remainder has been determined at the highest rate which on the happening of any of said contingencies or conditions would be possible under the provisions of this article, the State Comptroller, in the counties wherein this tax is payable direct to him, and in all other counties the treasurer of said counties, respectively, when such tax is paid shall retain and hold to the credit of said estate so much of the tax assessed upon such contingent remainders as represents the difference between the tax at the highest rate and the tax upon such remainders which would be due if the contingencies or conditions had happened at the date of the appraisal of said estate, and the State Comptroller or the county treasurer shall deposit the amount of tax so retained in some solvent trust company or trust companies or savings banks in this State, to the credit of such estate, paying the interest thereon when collected by him to the executor or trustee of said estate, to be applied by said executor or trustee as provided by the decedent's will. Upon the happening of the contingencies or conditions whereby the remainder ultimately vests in possession, if the remainder then passes to persons taxable at the highest rate, the State Comptroller or the county treasurer shall turn over the amount so retained by him to the State Treasurer as provided herein and by section two hundred and forty of this article,

---

* Since amd. by Laws of 1916, chap. 550. — [REP.

or if the remainder ultimately vests in persons taxable at a lower rate or a person or corporation exempt from taxation by the provisions of this article, the State Comptroller or the county treasurer shall refund any excess of tax so held by him to the executor or trustee of the estate, to be disposed of by said executor or trustee as provided by the decedent's will. Executors or trustees of any estate may elect to assign to and deposit with the State Comptroller or the county treasurer, bonds or other securities of the estate approved by the State Comptroller, or the county treasurer, both as to the form of the collateral and the amount thereof, for the purpose of securing the payment of the difference between the *tax on said remainder at the highest rate and the tax upon said remainder which would be due if the contingencies or conditions had happened at the date of the appraisal of said estate*, and cash for the balance of said tax as assessed, which said bonds or other securities shall be held by the State Comptroller, or the county treasurer, to the credit of said estate until the actual vesting of said remainders, the income therefrom when received by the State Comptroller or the county treasurer to be paid over to the executor or trustee during the continuance of the trust estates and then to be finally disposed of in accordance with the ultimate transfer or devolution of said remainders as hereinbefore provided; and it shall be the duty of the executors or trustees of such estates to forthwith notify the State Comptroller of the actual vesting of all such contingent remainders.

"If any executor or trustee shall have deposited with the State Comptroller, or the county treasurer, cash or securities, or both cash and securities, to an amount in excess of the sum necessary to pay the transfer tax upon such contingent remainders at the highest rate as aforesaid, the excess of tax so deposited shall be returned to the executor or trustee, or if any executor or trustee shall have deposited with the State Comptroller, or the county treasurer, cash or securities, or both cash and securities, to an amount less than is sufficient to pay the tax upon such contingent remainders as finally assessed and determined, the executor or trustee of said estate shall forthwith, upon the entry of the order determining the correct amount of tax due, pay to the State Comptroller, or the county

treasurer, whichever is entitled under the provisions of this article to receive the tax, the balance due on account of said tax."

Under this last amendment it is required that a tax shall be imposed upon each expectant or contingent estate at the highest rate which on the happening of any possible contingency or condition would be payable under the provisions of the Tax Law, and it is also necessary that some one shall determine what would be the tax due and payable under said law if the contingency or condition had happened at the date of the appraisal of the estate, so that it may be known what sum should be deposited to the credit of the estate or secured as provided by the amendment.

It is this latter determination that the learned surrogate has been asked, and has refused to make. He has couched his refusal in a very vigorous and positive opinion in which he has undertaken to demonstrate at some length that the surrogate, now that his court has been made a constitutional court and a court of record, is a judicial officer and that it is beyond the power of the Legislature itself to impose upon a judicial officer the performance of purely ministerial and non-judicial duties, such as he considers that the State Comptroller asks him to perform when he asks him to state in his order what the rate of tax would be upon certain contingent remainders if the contingency upon which they are to vest in possession had presently happened. To comply with this request would in his opinion be to perform a mere act of arithmetical calculation, quite beneath the dignity of a judicial officer whose office is protected by the Constitution.

It needed much less argument and citation of authorities than has been expended upon the subject to prove that the surrogate is a judicial officer, and that, as such, no duties can be lawfully imposed upon him except those of a judicial nature. We do not agree, however, that the determination which the surrogate has been asked to make is wholly unjudicial in its character, or that it is one which cannot be made by a court of record established by the Constitution without a surrender of its dignity. It is certainly no more so than is the act of the surrogate in fixing the amount of the tax chargeable upon a contingent remainder at the highest rate

First Department, December, 1916.          [Vol. 175.

possible under the provisions of the will, although both involve incidentally the making of a mathematical calculation.  Both determinations require an examination and construction of the will, and a consideration of the Tax Law in so far as it fixes different rates of tax, and the ascertainment, as a matter of fact, of the relationship to the testator of the possible ultimate beneficiaries of his estate.

We find ourselves unable to fully appreciate the suggestion of the learned surrogate that the determination he is asked to make is solely for the benefit of the State Comptroller.  It is at least as much for the benefit of the trust beneficiaries in consideration for whom the present act was passed, and above all, it is for the benefit of the due and orderly administration of justice which requires that questions which may give rise to differences and litigation should when possible be avoided by apt and proper judicial action.

The will of the deceased and the report of the appraisers furnish all the facts necessary to a determination of the question which the State Comptroller wishes to have determined.  In view of the very determined attitude of the learned surrogate it would seem to be unwise to refer the matter back to him, since this court has power to make the order which he should have made.

The order appealed from will, therefore, be reversed and the order resettled and modified, but without costs since there is no respondent.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concurred.

Order reversed and order resettled and modified, without costs.  Order to be settled on notice.