In the Matter of the Transfer Tax upon the Estate of VARONA DeCordova, Deceased.

EVELYN DeCORDOVA, Executrix, etc., of VARONA DeCor-dova, Deceased, Appellant; THE COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

First Department, January 13, 1922.

Taxation — transfer tax — both maximum and minimum rate should be fixed by surrogate where interest of transferees dependent on contingencies or conditions — Laws of 1911, chapter 800, amending Tax Law, § 241, construed and applied — said statute applicable though testator died before statute enacted — executrix had right to deposit securities with Comptroller to secure difference between minimum and maximum tax.

Proceedings commenced after the amendment of section 241 of the Tax Law by chapter 800 of the Laws of 1911 became effective, to fix the transfer tax on property transferred in trust for the benefit of the testator's wife during life and on her death for the benefit of her daughter and then to go to her issue, or in case of failure of issue to such persons as she might appoint by will, and, on failure of appointment, to the testator's heirs at law, are governed by said section as amended, though the testator died before the amendment became effective.

The original order, therefore, should have fixed both the minimum and the maximum rate applicable to any of the contingencies or successions under the will.

Furthermore, the executrix had the right to deposit with the Comptroller securities of the estate approved by him, to secure the payment of the difference between the tax on said remainder at the highest rate and the tax upon said remainder which would be due if the contingencies or conditions had happened at the date of the appraisal of said estate, and cash for the balance of said tax assessed. And this right was not defeated by the fact that the executrix had already paid to the Comptroller the highest rate and said sum had been turned over to the State Treasurer.

APPEAL by Evelyn DeCordova, as executrix, from an order of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 21st day of July, 1921, denying a motion to resettle a prior order entered on the 10th day of July, 1916, fixing and assessing a tax upon the transfers of the property of Varona DeCordova, deceased.

*Joseph G. Deane* [*Philip A. Walter* of counsel], for the appellant.

*Lafayette B. Gleason* [*Schuyler C. Carlton* of counsel], for the respondent.

PAGE, J.:

The testator died March 15, 1911, leaving a will which was duly admitted to probate by the surrogate of New York county. By the terms of this will the testator transferred his residuary estate in trust to pay over the income to his wife during her life, and upon her death to pay over the income to his daughter for life, and upon her death he gave the principal of his estate to his daughter's issue. Failing issue, the property went to such persons as his daughter might appoint by will, and failing such appointment, to the testator's heirs at law. Similar provision was made to cover the contingency of the daughter dying without issue before her mother. The rights, interest and estate of the transferee were dependent upon conditions whereby they might be defeated or abridged, and consequently in the transfer tax proceeding the appraiser reported and the order fixing the tax provided for the payment of the tax at the highest rate possible under the Transfer Tax Law. The tax so assessed amounted to $12,886.98, while the tax, if the property went to the direct descendants of the testator, would amount to $2,577.39, a total difference of $10,309.59.

Prior to 1899 remainders affected by contingencies and conditions were not taxed until they vested in possession and enjoyment.

The difficulty and uncertainty of the collection of the tax led the Legislature to enact chapter 76 of the Laws of 1899, amending section 230 of the Tax Law (Gen. Laws, chap. 24; Laws of 1896, chap. 908)* to read as follows:

" When property is transferred in trust or otherwise, and the rights, interest or estates of the transferees are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, a tax shall be imposed upon said transfer at the highest rate which, on

---

* Now Tax Law (Consol. Laws, chap. 60; Laws of 1909, chap. 62), § 230, as amd.— [REP.

the happening of any of the said contingencies or conditions, would be possible under the provisions of this article, and such tax so imposed shall be due and payable forthwith, out of the property transferred; provided, however, that on the happening of any contingency whereby the said property, or any part thereof, is transferred to a person or corporation exempt from taxation under the provisions of this article, or to a person taxable at a rate less than the rate imposed and paid, such person or corporation shall be entitled to a return of so much of the tax imposed and paid as is the difference between the amount paid and the amount which said person or corporation should pay under the provisions of this article, with legal interest thereon from the time of payment."

The Court of Appeals held this law constitutional. (*Matter of Vanderbilt*, 172 N. Y. 69.) It pointed out, however, in a later case, how unfairly the statute bore upon the life tenant. The deduction of the tax reduced the corpus of the trust fund and diminished the income payable to the life tenant, and although the statute provided for a refund of the excess fund with interest, if the remainder vested in persons, the transfer to whom was taxed at a rate less than that exacted, such refund was generally made after the death of the life tenant, and it was suggested in fairness, although the statute did not so provide, that the interest on the amount paid to the State should be paid to the life tenant. The court pointed out that in the majority of cases the remainders are first appointed to the issue of the life tenant and descendants of the testator, and are given to collaterals or strangers only in default of issue. Thus the lowest rate of tax usually proves the final rate. Therefore, if the Legislature desired to make taxes on remainders payable immediately, it would be fairer to the life tenant to have the tax assessed at the lowest rate of any succession provided for by the will, and in case the remainder eventually vesting should prove taxable at a higher rate, then such increased tax should be payable at the time of its enjoyment. (*Matter of Brez*, 172 N. Y. 609, 611.) It was to remove the injustice of the law, while at the same time securing the State against any danger of failing to receive the proper tax, as we pointed out in *Matter of Spingarn* (175 App. Div. 806, 809), that led to the enactment of chapter 800

of the Laws of 1911, effective July 28, 1911, amending section 241 of the Tax Law, to provide, stated briefly, that whenever the tax on a contingent remainder has been determined at the highest rate which on the happening of any of the said contingencies or conditions would be possible, the State Comptroller in the counties wherein the tax is payable directly to him shall retain and hold to the credit of said estate so much of the tax assessed upon such contingent remainder as represents the difference between the tax at the highest rate and the tax upon such remainders, and that he shall deposit such sum in a trust company or savings bank to the credit of the estate, paying the interest thereon when collected by him to the executor or trustee of said estate, to be applied by said executor or trustee as provided by the decedent's will; and upon the happening of the contingencies whereby the remainder ultimately vests in possession, if the remainder then passes to persons taxable at the highest rate, the State Comptroller shall turn over the amount so retained by him to the State Treasurer. If the remainder ultimately vests in the persons taxable at the lower rate or a person or corporation exempt from taxation, the State Comptroller shall refund any excess of tax so held by him to the executors or trustees of the estate. It also provides that executors or trustees may elect to assign to and deposit with the Comptroller bonds or other securities of the estate approved by the State Comptroller, securing the payment of the difference between the tax on said remainder at the highest rate and the tax upon said remainder which would be due if the contingencies or conditions had happened at the date of the appraisal of said estate, and cash for the balance of said tax as assessed. If the executor or trustee shall have deposited with the State Comptroller cash or securities to an amount less than is sufficient to pay the tax upon such contingent remainders as finally assessed and determined, the executor or trustee shall forthwith, upon the entry of the order determining the correct amount of tax due, pay to the said Comptroller the balance due on account of such tax.

Although the testator died before this amendment became effective, proceedings for determining the amount of the transfer tax on this estate were commenced after it became a law. This act dealt with procedure under the Transfer Tax

Law, and not with the substance of the law. It did not change the rate of taxation nor affect the amount to be paid to the State; it merely provided for the manner in which the fund paid to the State was to be thereafter administered. It was intended to remove an inequitable practice and substitute one which was equitable and just as well to the State, the life tenant, and the remainderman. In our opinion it applied to the proceedings to tax the transfers under the will of this decedent, and, therefore, the original order should have fixed the amount of the transfer tax at both the maximum and minimum rate applicable to any of the contingencies of succession under the will of the testator. At the time the order was made, the surrogate before whom the proceeding was had was holding in all of these cases that he was required only to fix the maximum of the tax, and that the Comptroller should fix the minimum. This error on his part was corrected in *Matter of Spingarn (supra)*.

The attorney for the estate demanded of the State Comptroller the right to deposit securities for the difference between the highest and lowest tax assessable upon the transfers. The matter remained in abeyance until March, 1921, when the representative of the Comptroller finally informed the attorney for the estate that the Comptroller would not consent to the deposit of securities and insisted upon the payment of the entire tax in cash. On April 15, 1921, an order was entered without opposition, remitting the penalties. On April 23, 1921, the executrix caused to be sent to the Comptroller a check for the tax due with a letter stating: " The executrix makes this payment to avoid further interest and penalties, and without prejudice to her right to claim the benefit of the provisions of the Tax Law in regard to the deposit of securities, and of other provisions of section 241 of the Tax Law."

We are of opinion that the surrogate should have granted the order resettling the order in the manner requested.

The attorney for the State Tax Commission suggests difficulties in now accepting the deposit of securities, in that the full amount of the tax had been paid over to the State Treasurer and that there was no fund deposited by the Comptroller to the credit of the estate for which the securities could be substituted. There is no proof before us that this

money has been paid over to the Treasurer; but if it has been, it is held by the State subject to the right of refund. And although the transfer tax bureau and the duties of the Comptroller in regard to transfer tax matters has, in a large degree, been taken from him and vested in the State Tax Commission, there are existing agencies of the State government entirely competent under the law to discharge the obligation of the State in this matter. (Laws of 1921, chap. 476, § 21, amdg. Tax Law, § 241.) With the details of the matter we are not at this time concerned. The application to the Surrogate's Court was for a resettlement of an order, so that the same would state the minimum as well as the maximum tax. This motion, we hold, should have been granted. We do not now pass upon the effect of the order.

The order should be reversed, with ten dollars costs and disbursements, and motion granted.

CLARKE, P. J., LAUGHLIN, DOWLING and SMITH, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted. Settle order on notice.