In the Matter of the Application of JULIA T. DICK and Another, as Executrices of the Estate of WILLIAM DICK, Deceased, for a Peremptory Order of Mandamus against VINCENT B. MURPHY, as State Comptroller, and Others.

Supreme Court, Albany County, July, 1926.

**Taxation — transfer tax — tax on contingent remainder at highest rate — order fixing tax failed to determine lowest rate — estate is entitled, under Tax Law, §§ 230, 241, to interest on amount of refund determined on happening of contingency — Tax Law, § 225. is not applicable.**

The fact that a transfer tax order, fixing the amount of transfer tax on property devised for life with contingent remainder over, fixes the highest rate, as prescribed by sections 230 and 241 of the Tax Law, but fails to fix the lowest rate, does not deprive the estate of interest on the amount of refund to which it is entitled upon the happening of the contingency.

Therefore, under the circumstances stated, the estate is entitled to interest from the date of payment to the State Comptroller at such rate as the State Comptroller has received during such time upon deposits made pursuant to section 241 of the Tax Law, notwithstanding the State Comptroller did not deposit the funds in some solvent trust company or trust companies or savings bank in

the State to the credit of the estate as required by section 241 of the Tax Law, but turned over the entire amount to the State Treasurer.

Section 225 of the Tax Law, which provides that the refund shall be without interest, is not applicable.

APPLICATION for peremptory order of mandamus.

*Henry F. Cochrane,* for the petitioners.

*Albert Ottinger, Attorney-General [Henry S. Manley, Deputy Attorney-General,* and *Seth T. Cole* of counsel], for the respondents.

STALEY, J. The petitioner seeks a peremptory mandamus order directing the payment or refund of the excess of a transfer tax paid to the State Comptroller in the estate of William Dick, deceased, together with interest thereon from the date of payment.

William Dick died in the county of Kings on April 5, 1912. His will, admitted to probate by the surrogate of Kings county, so far as here material, provides: " One undivided half of such rest, residue and remainder to my son, J. Henry Dick, for him to have the use, income, and profit thereof during his lifetime, and after his death, I do give, devise and bequeath his said undivided half to his lawful heirs and next of kin, equally, *per stirpes* and not *per capita.*"

Transfer tax proceedings resulted in a tax of $70,486.99 on the share of the " lawful heirs and next of kin of J. Henry Dick," which tax was at the highest rate which, on the happening of any of the contingencies under such will, would be possible under the law. This tax, less allowance for discount, was paid to the State Comptroller by the estate.

J. Henry Dick, the life beneficiary, died on September 30, 1925, leaving two sons and two daughters him surviving. Thereafter and on April 14, 1926, a decree was entered in such Surrogate's Court modifying the original temporary taxing decree and providing for a tax upon the shares of the then known and ascertained lawful heirs and next of kin of J. Henry Dick of $18,759.16, leaving the amount with discounts due the estate on account of such tax of $49,141.44.

This amount is conceded to be due to the estate, and the Tax Commission is ready and willing to make payment. The only issue is whether the amount of the refund should be paid with interest; the petitioners claiming interest and the State opposing it.

At the time of the death of William Dick, and of the taxation of this estate, sections 230 and 241 of the Tax Law, as amended by chapter 800 of the Laws of 1911,* provided in part as follows:

---

* Since amd. by Laws of 1925, chap. 144.— [REP.

" § 230. * * * When property is transferred in trust or otherwise, and the rights, interest or estates of the transferees are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, a tax shall be imposed upon said transfer at the highest rate which, on the happening of any of the said contingencies or conditions, would be possible under the provisions of this article, and such tax so imposed shall be due and payable forthwith by the executors or trustees out of the property transferred, and the surrogate shall enter a temporary order determining the amount of said tax in accordance with this provision; provided, however, that on the happening of any contingency whereby the said property, or any part thereof, is transferred to a person or corporation exempt from taxation under the provisions of this article, or to any person taxable at a rate less than the rate imposed and paid, such person or corporation shall be entitled to a return of so much of the tax imposed and paid as is the difference between the amount paid and the amount which said person or corporation should pay under the provisions of this article; and the executor or trustee of each estate, or the legal representative having charge of the trust fund, shall immediately upon the happening of said contingencies or conditions apply to the surrogate of the proper county, upon a verified petition setting forth all the facts, and giving at least ten days' notice by mail to all interested persons or corporations, for an order modifying the temporary taxing order of said surrogate so as to provide for the final assessment and determination of the tax in accordance with the ultimate transfer or devolution of said property. Such return of overpayment shall be made in the manner provided by section two hundred and twenty-five of this article. * * *

" § 241. * * * Whenever the tax on a contingent remainder has been determined at the highest rate which on the happening of any of said contingencies or conditions would be possible under the provisions of this article, the state comptroller, in the counties wherein this tax is payable direct to him, and in all other counties the treasurer of said counties, respectively, when such tax is paid shall retain and hold to the credit of said estate so much of the tax assessed upon such contingent remainders as represents the difference between the tax at the highest rate and the tax upon such remainders which would be due if the contingencies or conditions had happened at the date of the appraisal of said estate, and the state comptroller or the county treasurer shall deposit the amount of tax so retained in some solvent trust company or trust companies or savings banks in this state, to the credit of such estate, paying the interest thereon when collected by him to the executor or

trustee of said estate, to be applied by said executor or trustee as provided by the decedent's will. Upon the happening of the contingencies or conditions whereby the remainder ultimately vests in possession, if the remainder then passes to persons taxable at the highest rate, the state comptroller or the county treasurer shall turn over the amount so retained by him to the state treasurer as provided herein and by section two hundred and forty of this article, or if the remainder ultimately vests in persons taxable at a lower rate or a person or corporation exempt from taxation by the provisions of this article, the state comptroller or the county treasurer shall refund any excess of tax so held by him to the executor or trustee of the estate, to be disposed of by said executor or trustee as provided by the decedent's will.   *   *   * "

At the time of the death of William Dick and of the assessment and payment of the tax here in question, the above sections were in force and in effect provided that the transfer tax on remainders dependent upon contingencies should be taxed by temporary order at the highest rate, and, if the contingency eventuated to make a less rate apply, the taxing order should be modified accordingly by final order and a refund made of the difference.   (§ 230.)

When such tax upon a contingent remainder was determined at the highest rate, the State Comptroller or county treasurer was directed upon the payment of the tax to retain and hold to the credit of such estate so much of the tax assessed upon such contingent remainder as represents the difference between the tax at the highest and lowest rate, and to deposit same to the credit of the estate, paying the interest thereon when collected by him to the executor or trustee of such estate.   (§ 241.)

These two sections enacted by the same law should be read together and each given its proper and legal effect. The one provided how contingency remainders should be taxed and the other provided the duty of the Comptroller or county treasurer as to the method of disposition of the tax when paid to him. It was clearly the intent of the Legislature that the difference between the high and low rate, in all cases where remainders were contingent, should be held and retained by the Comptroller or county treasurer and segregated from the balance of the tax, and that the estate should receive the interest until the happening of the contingency which determined the final disposition.

The policy of the State to afford a means for estates to receive the income from such funds during the suspension of the contingency was thereby unmistakably established. This law recognized that future contingent estates were not taxable until they vested in possession and the beneficial owners ascertained (*Matter of Vander-*

*bilt,* .172 N. Y. 69, 71) and that the fund did not belong to the State, but that it might become its property. It placed it in the possession and under the control of the Comptroller or county treasurer, and directed its deposit to the " credit of such estate." It was intended to remove an inequitable practice and substitute one which was equitable and just as well to the State, the life tenant, and the remaindermen. (*Matter of De Cordova,* 199 App. Div. 492, 496.)

The original taxing order herein fixed the tax only at the highest rate. The lowest rate was not fixed or set forth in the order, and the tax received was paid in its entirety by the Comptroller into the State treasury.

The State now asserts that the petitioners are estopped from claiming interest on the fund, because the form of the order failed to disclose for the information of the Comptroller the exact amount of the difference to be held and retained by him. The duty to retain and hold this difference was nevertheless imposed upon the Comptroller by mandatory direction, and the performance of that duty was not qualified in the statute by the form of the order. The computation of the difference was a mere mechanical administrative detail, and the Comptroller's right, if necessary, to seek a modification of the order, would have been recognized upon proper application (*Matter of Spingarn,* 175 App. Div. 806) if the Comptroller deemed it expedient to have the tax at the highest and lowest rate fixed by court order, although the statute in no way required such procedure as a condition for the performance of the duty placed upon the Comptroller or for the protection of the taxpayer.

In addition, the administration and enforcement of the Transfer Tax Law was reposed in large measure in the hands of the Comptroller. Upon him rested the power and duty to apply for the taxation of estates, and to him was directed a notice of the appraisal of each estate. (§ 230.) He was a necessary party to every taxing proceeding. To hold that his duty amounted to nothing more than to receive the tax as it came to him, deposit the difference when the taxing order established that difference, and transfer the entire amount to the State treasury when the order was silent as to the amount of the difference, is, I believe, a disregard of the procedure of the law and a violation of its positive mandate.

To return the income of the fund of such estates as are taxed by one method and deny its return to such estates taxed by another method is a procedure unworthy of the just and equal considerations due to citizens from their State.

The contention of the State that the petitioners have lost their right to interest because of the taxing procedure pursued by the

estate which they represent, and that their rights are now limited by section 230 and by section 225 (as amd. by Laws of 1911, chap. 308), as to the manner of refund, which latter section expressly provides that the refund shall be without interest, is not equitable or sound.

Section 225 does not apply to the situation here presented. It relates solely to a refund based upon the reduction of a taxed legacy or distributive share by the payment of subsequent proven debts, and then only when the taxing order is modified by the surrogate " within two years from and after the date of entry of the order fixing the tax."

As was said by Justice COCHRANE in *People ex rel. Metropolitan Trust Co.* v. *Travis* (191 App. Div. 129, 131) the provision that refund was to be made under section 225 without interest " was expressly limited to that section." The right to interest from the State upon a tax refund has likewise been sustained in the absence of any express provision on the subject.

In *Matter of O'Berry* (179 N. Y. 285) it was held that a tax paid under an unconstitutional law was recoverable with interest, even though the refunding law was silent as to the payment of interest.

In *People ex rel. Metropolitan Trust Co.* v. *Travis* (*supra*) the payment of interest upon the refunded tax was sustained, and Justice COCHRANE in the opinion expressly stated that section 241 of the Tax Law, as amended by chapter 800 of the Laws of 1911, " indicates the policy of the State that interest shall be paid."

The rule has also been established in this State that the payment of interest upon an indebtedness applies to the State upon the same legal and equitable principle which governs decisions as between individuals. (*People* v. *Canal Commissioners*, 5 Den. 401; *Pease* v. *Barber*, 3 Caines, 266.)

Peremptory order of mandamus may issue, directing the respondents to refund to the petitioners out of the funds in their hands or custody to the credit of such taxes the sum of $49,141.44, with interest thereon from the date of payment to the State Comptroller at such rate as the State Comptroller has received during such time upon deposits made pursuant to section 241 of the Tax Law. If attorneys are unable to agree upon the form of order as to rate of interest, the proceeding may be continued for the purpose of presenting testimony as to the rate of interest so received. Order may provide fifty dollars costs to the petitioners and disbursements.