## In re ESTATE OF NAH-ME-TSA-HE. CHILDERS, Aud., v. POPE, Adm'r, et al.

No. 16979—Opinion Filed Oct. 5, 1926.

**1. Indians—Lands — Congressional Control During Restrictive Period.**

During the trust or restrictive period, Congress has power to control lands within a state which have been duly allotted to Indians by the United States and thereafter conveyed through trust or restrictive patents.

**2. Taxation—Nonliability of Restricted Indian Land for Inheritance Tax.**

That the United States directs Indian lands to descend, during the restrictive period, according to the laws of the state in which they are situated, does not make them pass under the laws of such state so as to become subject to inheritance taxation by the state.

**3. Taxation—Inheritance Tax—Liability of Personalty of Incompetent Full-Blood Osage Indian.**

Where personal property, not held in trust by the federal government, is left by a deceased, incompetent, full-blood Osage Indian, as part of her estate, descendible under the statutes of Oklahoma, the same, less legal allowances and exemptions, is subject to an inheritance tax under the laws of this state.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Osage County; Jesse J. Worten, Judge.

In the matter of state inheritance tax on the estate of Nah-me-tsa-he. Proceeding by C. C. Childers, State Auditor, against O. V. Pope, administrator, and others to collect inheritance tax. Judgment for defendants in the county court, affirmed by the district court, and plaintiff brings error. Affirmed in part, and reversed in part.

Geo. F. Short, Atty. Gen., and V. P.

Crowe and Leon S. Hirsh, Asst. Attys. Gen., for plaintiff in error.

J. M. Humphreys and Wilson. Murphey & Duncan, for defendants in error.

Opinion by THOMPSON, C. This is an appeal from the judgment of the district court of Osage .county, rendered on the 12th day of October, 1925, affirming the judgment of the county court of said county and denying the plaintiff in error the right to collect the inheritance tax under the laws of the state of Oklahoma out of the estate of Nah-me-tsa-he, deceased, an incompetent, full-blood Osage Indian.

Parties will be referred to here as they appeared in the lower court, that is, C. C. Childers as plaintiff and the defendants in error as defendants.

The plaintiff, C. C. Childers, as State Auditor, filed in the county court of Osage county, his application for a citation to show cause why an inheritance tax in the sum of $4,927.82 should not be assessed, levied, and paid out of the estate of Nah-me-tsa-he, deceased. The administrator and the heirs answered, and upon a hearing before the county court the county court denied the right of the State Auditor to assess, levy and collect the inheritance tax against said estate, from which judgment denying said right, the plaintiff appealed to the district court, and upon a hearing said judgment was, in all things, affirmed, and from this judgment the plaintiff appeals to this court for review.

The issues and facts necessary to a decision in this case are: That Nah-me-tsa-he, a full-blood Osage Indian, died without a certificate of competency on the 27th day of January, 1924, leaving surviving her as her sole and only heirs at law, O. V. Pope, her husband, of no Indian blood, and Rhoda Wheeler Pope, her daughter, a full-blood Osage Indian, without a certificate of competency; that her said husband, O. V. Pope, and her said daughter, Rhoda Wheeler Pope, each took an undivided one-half interest in the entire estate of Nah-me-tsa-he, deceased; that she died intestate possessed of the following described property: Three shares in the Osage tribal mineral rights of the estimated value of $150,000, United States Liberty Bonds, par value $6.950; lands allotted and inherited, as above described, appraised at $31,793; cash in Citizens' National Bank at Pawhuska, $10,000: real estate mortgage notes, par value, $17,750; automobile and farming machinery $6,199; that certain deductions, in determining the amount of the net estate, for funeral · expenses, attorney fees, administrator's bonds, court costs, debts, .and family allowances, were proper items to be deducted from the total value of the estate, and in the application for citation the plaintiff seeks· to assess, levy, and collect tax of $2,488.91 against the undivided one-half interest of her husband, and $2,438.91 against the undivided one-half interest of the daughter, making a total tax of $4,927.82 with 10 per cent. penalty from the date of the decedent's death on January 27, 1924.

It was conceded in oral argument, on part of the Attorney General for the plaintiff, that, under the decision of the case of C. C. Childers, State Auditor of Oklahoma, Appellant, v. John Beaver and Benjamin Quapaw, Appellees, 70 L. Ed. (U. S.) 462, decided April 12, 1926, subsequent to the· decision complained of in this case, the allotment, and whatever mineral shares and other tribal interest that was owned, held, and possessed by Nah-me-tsa-he at the time of her death, would not be chargeable with inheritance tax against her full-blood Osage daughter, Rhoda Wheeler Pope, but that it would be assessable and collectable as against the undivided one-half interest of O. V. Pope, her surviving husband, who was not of Indian blood. It is further contended that the inheritance tax is assessable and/ collectable against all the personal property owned and possessed by the deceased, at the time of her death.

Then, as we view it, the first question to be determined is, whether the inheritance tax is a tax upon the right of the decedent to transmit her estate in this case and her heirs to receive it, and whether such right arises under the laws of the state or the United States.

Congress, by the Constitution of the United States, was given the power and authority to legislate with regard to Indians, and, in the Enabling Act. authorizing the establishment of the state of Oklahoma, section 1 reserved. the right to make any law or regulation respecting the Indians, their lands, property, or other' rights by treaties, law, and otherwise, which would have been competent to make if the act had never been passed. This provision of the Enabling Act was accepted by the framers of· the Constitution of the state of· Oklahoma, and in section 3 of article 1 of said Constitution, they disclaimed all right and title in or to any unappropriated public lands lying within the boundaries of the state, and to all lands lying within said limits owned or held by any Indian Tribe or Nation. On the 28th of June, 1906, 34 Stats. 539, Congress passed

the Osage Allotment Act, providing for the allotment in severalty of the lands of the Osage Nation, but reserved the oil, gas, coal, and other mineral rights for the use of the Indian Tribe for a period of 25 years, providing that the royalty received for said mineral rights should be paid to said tribe. The time was extended on March 3, 1921, to 1946. In the Allotment Act it is further provided that all leases should be made by the tribal council with the approval of the Secretary of the Interior, and under rules and regulations prescribed by him, and that the money received from the leases for mineral purposes and for other purposes should be collected and deposited in the Treasury of the United States to the credit of the Osage Tribe of Indians, and distributed to individual members of said tribe, according to the roll provided for in said act. It is also provided that the mineral interest of any deceased member of the Osage Tribe should descend to his or her legal heirs, according to the laws of the territory of Oklahoma, or of the state in which said reservation may hereinafter be incorporated, and vested the authority to carry the act into effect, in the Secretary of the Interior. In all subsequent acts the federal Congress reserved its right to superintend and control the lands and property of restricted, incompetent Osage Indians, except certain delegated powers vested in the county or probate courts of the state of Oklahoma.

As above stated, this cause was tried and the brief of the Attorney General for plaintiff filed in this cause was prepared before the late case of Childers v. Beaver, supra, was decided. The Supreme Court of the United States decided adversely to the contention of the Attorney General in this case upon the question as to whether the real property passed to the heirs by virtue of the laws of the state and subject to the inheritance taxes of the state in the following language:

"Congress provided that the lands should descend and directed how the heirs should be ascertained. It adopted the provisions of the Oklahoma statute as an expression of its own will—the laws of Missouri, or Kansas, or any other state, might have been accepted. The lands really passed under a law of the United States, and not by Oklahoma's permission."

In the last paragraph of the opinion the Supreme Court said:

"It must be accepted as established, that during the trust or restrictive period Congress has power to control lands within a state which have been duly allotted to Indians by the United States and thereafter conveyed through trust or restrictive patents. This is essential to the proper discharge of their duty to a dependent people; and the means or instrumentalities utilized therein cannot be subjected to taxation by the state without assent of the federal government."

We therefore must hold that the real estate and the mineral interests in this case were cast under the law of the United States, which adopted the Oklahoma statute. In the Beaver Case, supra, the deceased intestate, See-sah, was a full-blood, restricted Quapaw Indian woman, and her heirs as determined by the Secretary of the Interior, were John Beaver and Benjamin Quapaw, full-blood Quapaws, and the only difference between the Beaver Case and the instant case is that one of the heirs in the instant case is not of Indian blood. We are of the opinion that it is immaterial as to who were the recipients of the estate as heirs of the deceased party. We are of the opinion that the inheritance tax is authorized to be assessed, levied, and collected by the state or the United States, and the authority is given for the privilege of allowing or authorizing a party to transmit by a will, deed, or conveyance, to be operative after the death of decedent, or by operation of law in case of an intestate decedent, under the laws of descent and distribution, applicable to the transfer of said estate. Section 9856, Comp. Stats. 1921, provides:

"A tax shall be and is hereby imposed upon any transfer of any property, real, personal, or mixed, or any interest therein. * * *"

Under the Beaver Case, it being held that the real property passed by permission of the laws of the United States and not by Oklahoma law, then no inheritance tax can be collected by plaintiff against the allotment, inherited lands or tribal mineral interests of the deceased. Under the last-quoted paragraph of the Beaver Case, supra, the property having passed under instrumentalities used therein provided by the government of the United States, it cannot be subjected to taxation by the state of Oklahoma without the assent of the federal government.

The record discloses that a portion of the estate consisted of $40,899 in personal property in addition to the allotment, inherited land, and three tribal mineral rights, owned by decedent at the time of her death. There is nothing in the record to show that this personal property was under control of the federal government, or under its authority. Under such circumstances, we are of the opinion that the personal property, less allowances and exemptions, is subject to the state inheritance tax, as the descent of this

property is controlled by the general law of this state regulating the same, independent of the federal statute regulating the descent of the real property in this case. The Beaver Case, supra, does not extend the inhibition to personal property in this case. The disposed to go further than the rule therein established.

We are therefore of the opinion that the judgment of the trial court should be affirmed as to the allotment, inherited lands, and mineral tribal interests of the estate, but reversed as to the personal property not held in trust by the federal government. The cause is remanded to the trial court, with instructions for further proceedings not inconsistent with the views herein expressed.

By the Court: It is so ordered.

Note.—See under (1) 31 C. J. p. 509, §67 (Anno). (2) 31 C. J. p. 524, §96; 37 Cyc. p. 867 (Anno). (3) 31 C. J. p. 545, §149 (Anno).