In re PRYOR'S ESTATE.
PRYOR v. CRAFT et al.

No. 31066.   Feb. 18, 1947.

Rehearing Denied April 8, 1947.

Second Petition for Rehearing Denied June 24, 1947.

*181 P. 2d 979.*

Wm. S. Hamilton and Matthew J. Kane, both of Pawhuska, for plaintiff in error.

Chas. R. Gray, W. N. Palmer, Louis O. Fink, MacDonald & Files, and Till-

18

man & Tillman, all of Pawhuska, and G. K. Sutherland and O. L. Barlow, both of Hominy, for defendants in error.

ARNOLD, J. Woodrow Pryor, an unallotted fullblood member of the Osage Indian Tribe, died intestate in Osage county, Okla., on October 20, 1938. At the time of his death he was 19 years of age. He had never been married. Surviving him as his next of kin was his mother, Martha Pryor, Osage Allottee, No. 99, a living half sister, Susie Pryor Craft, daughter of Antwine Pryor, the three minor children of a full brother, Alfred Pryor, who died intestate on October 21, 1936, Alfred Antwine Pryor, Mary Martha Pryor and Irene Marcelle Pryor, and a fullblood brother, Elmer Pryor, an unallotted Osage who died on May 17, 1939, after the death of the said Woodrow Pryor.

There is no controversy as to the facts. It was stipulated that the deceased inherited from his father, Antwine Pryor, an undivided interest in certain real estate, a fractional headright in the amount of 191/270th and building and loan stock; that except for accumulations thereto this was all the property of which he died seized; that the above-named half sister and the two brothers were children of his father, Antwine Pryor; that Elmer Pryor died after the death of Woodrow Pryor leaving surviving him a minor child, Julia Addie Pryor, and two claimants, each aserting to be the surviving widow, namely, Oliva McClure Pryor and Ola May Pryor, nee Davis; that in the matter of the estate of his father, Antwine Pryor, there was distributed to the credit of the said Woodrow Pryor the sum of $2,605.38 designated as trust fund and the sum of $22,065.44 designated as surplus funds; these funds were held by the Osage Indian Agency; that in a partition suit involving the real estate left by his father, Antwine Pryor, the 320 acres involved was distributed to Woodrow Pryor; in order to equalize the value thereof among the various participants in the division of said land

$1,101.38 was paid from the funds of Woodrow Pryor to the other interested parties. It was further stipulated that at the time of the death of Woodrow Pryor there stood to his credit in the Osage Indian Agency trust funds the sum of $2,668.64 and surplus funds in the amount of $23,588.36, and securities in the aggregate sum of $3,405.05; that on February 11, 1942, the trust fund amounted to $2,668.24, the surplus fund $28,456.30 and the securities $3,409.81.

The county court held that the property, funds and income descended from the father, Antwine Pryor, and that the estate should be distributed under subdivision 7, section 213, 84 O.S. 1941; that the mother, Martha Pryor, was not entitled to inherit any part or portion of the estate, and distributed same as follows: An undivided one-third interest to the half sister, Susie Pryor Craft, an undivided one-third interest to the three children of the full brother, Alfred Pryor, and the remaining one-third interest to the estate of Elmer Pryor, a full brother, whose estate was pending upon appeal in the district court of Osage county awaiting final judgment and settlement as to the true heirs of the said Elmer Pryor, deceased.

The mother, Martha Pryor, appealed to the district court of Osage county. After trial de novo, on the 12th day of February, 1942, the district court distributed the estate of Woodrow Pryor in the same manner as it had been distributed by the county court.

Martha Pryor appealed.

It is first contended:

"The property of a deceased member of the Osage Tribe of Indians who dies intestate, leaving no issue nor husband nor wife, goes to the parents equally, if both are living; if one parent be dead it all goes to the living parent."

Section 6 of the Osage Allotment Act, enacted by the Congress June 28, 1906 (34 St. L. 539), provides:

"That the lands, moneys and mineral interests, herein provided for, of any deceased member of the Osage Tribe shall descend to his or her legal heirs,

according to the laws of the Territory of Oklahoma or the state in which said reservation may be hereinafter incorporated except where the decedent leaves no issue nor husband nor wife, in which case said lands, moneys and mineral interests must go to the mother and father equally."

Subdivision 2, section 6895, Statutes of Oklahoma 1903, in force at the time of the enactment of the Allotment Act, in part, provided:

"If decedent leave no issue, nor husband nor wife, the estate must go to the father."

In 1909 this part of the subdivision was amended to read as follows:

"If decedent leave no issue, nor husband nor wife, the estate must go to the father or mother, or if he leave both father and mother, to them in equal shares."

This provision of subdivision 2 has not been amended or changed since that time and now appears as a part of subdivision 2 of section 213, 84 O.S. 1941.

Subdivision 7 of section 213, supra, was enacted in 1890 and has not been changed. It provides:

"If decedent leave several children, or one child and the issue of one or more children, and any such surviving child dies under age, and not having been married, all the estate that came to the deceased child by inheritance from such decedent, descends in equal shares to the other children of the same parent, and to the issue of any such other children who are dead, by right of representation".

The appellant, Martha Pryor, takes the position that the exception in section 6 of the Allotment Act applies to all property of deceased Osage Indians who were never married regardless of the source of title; that by reason thereof subdivision 7, supra, has no application to estates of deceased Osage Indians. In other words, Congress adopted the law of descent and distribution of the State of Oklahoma and made such law applicable to the estates of deceased Osage Indians with the exception of the

above-quoted part of said subdivision 2 and subdivision 7.

Congress retained control of the Indians and their tribal property and had the power to cast descent and control the devolution of their estates. The property of a deceased Indian, therefore, passes by virtue of the laws of the United States. See Childers v. Beaver, 270 U. S. 555, 70 L. Ed 730; Childers v. Pope, 119 Okla. 300, 249 P. 726.

By section 6, supra, Congress made the law of succession of the State of Oklahoma applicable to the estates of deceased Osage Indians except where the decedent left no issue nor husband nor wife. Later (37 St. L. p. 86, chap. 83, sec. 3) Congress conferred jurisdiction on the county courts of this state to determine heirs and distribute the estates of deceased Osage Indians. Congress by said acts cast the descent and the control of the devolution of the estates of deceased Osage Indians under the laws of the State of Oklahoma as interpreted and applied by the courts of this state except as indicated above.

It will be noted that subdivision 2, supra, prior to its amendment, provided that:

"If decedent leave no issue, nor husband nor wife, the estate must go to the father."

It seems clear to us that the exception set forth in section 6, supra, was for the specific purpose of correcting what Congress considered a deficiency or inequity in the law of succession of the Territory of Oklahoma as it existed at the time of the enactment of section 6, supra, which was that the mother received no part of her deceased minor child's estate where such child left no issue nor husband nor wife. (In 1909 the Legislature of the State of Oklahoma recognized this discrepancy and amended subdivision 2, making provision therein for the mother.) The wording of the exception, in our opinion, discloses that it was not intended to apply and has no application to the situation

contemplated by subdivision 7, supra, to wit: the death of a minor seized of ancestral property without issue and leaving surviving other children of his ancestor or issue of such children. Such exception contemplated a living father or mother and it is apparent that it does not have reference to property inherited by a minor child from a deceased parent. The applicability of subdivision 7, supra, to the estates of deceased Osage Indians has been recognized in the case of He-ah-to-me v. Hudson, 121 Okla. 173, 249 P. 138; United States v. Hale, 51 Fed. 2d 629.

We have held in case a party dies intestate leaving surviving his wife and several children and his estate is distributed one-third to the surviving wife and two-thirds equally to the children, that if one of the children dies during minority, without having been married, subdivision 7 becomes applicable and its interest in all the estate so inherited from its father goes, not to its mother, but to the surviving children and the issue of the children who are dead, of the deceased father. See He-ah-to-me v. Hudson, supra; Cooper v. Spiro State Bank, 137 Okla. 265, 278 P. 648; Zweigel v. Lewis, 139 Okla. 171, 281 P. 787; L.R.A. 1916C, 926; Deal v. Logan, 183 Okla. 513, 83 P. 2d 563. In the case of He-ah-to-me v. Hudson, supra, we quoted, with approval the following language from the case of De Castro v. Barry, 18 Cal. 97, wherein the California court considered a similar provision of the California statute:

"The respondent's counsel contends that this case falls within the seventh clause of the statute, and such is our opinion. The language of the clause is unequivocal. The act is carefully drawn, and we must suppose, embodies the deliberate meaning of the Legislature. We must give effect to this meaning without interpolating any new terms or qualifications, unless this be necessary to reconcile conflicting and contradictory expressions. The clause in question provides for a specific and peculiar state of facts; therefore, there is no contradiction between it and the general provisions going before, for these last provide the usual rule, while the latter clause provides the unusual rule, or the rule governing the particular case recited. This is not a contradiction, but only an exception. It is as if the second clause read: 'If the intestate shall leave no issue, or husband, or wife, the estate shall go to his or her father; provided, that if any person shall die leaving several children, and any one of them shall die unmarried, etc., the share of such decedent child coming from such deceased parent shall go to the surviving children of the same parent.' "

Subdivision 7, supra, applies only to property inherited by a minor from a deceased parent and has no application to the other property, if any, owned otherwise by such a minor.

The subdivision in no way affects, restricts nor circumscribes the handling of such an estate for the use and benefit of the minor. Alienation is not affected thereby nor is the estate suspended by contingency. Such estate, or any part thereof, may be sold by the guardian of the minor in the manner provided by law. The subdivision merely makes provision for the devolution of the part of such estate of the deceased parent vested in and remaining undisposed of by the minor at the time of the minor's death without having been married.

By the adoption of the law of succession of Oklahoma Congress determined that the ancestral estate of a minor Osage Indian, who dies without having been married, shall descend in equal shares to the other children of the parent from whom the property came and to the issue of such other children who are dead by right of representation.

Under our statute (84 O.S. 1941 §212) and the decisions of this court (Seal v. Banes, 168 Okla. 550, 35 P. 2d 704; Davis v. Morgan, 186 Okla. 30, 95 P. 2d 856)', upon the death of Antwine Pryor his entire estate descended and upon such descent became immediately vested in his heirs, of whom Woodrow Pryor was one.

The contemporaneous construction of the statute by the executive officers of the government, whose duty it is to administer it, is entitled to great respect but is not controlling. Accordingly, we have carefully considered the construction placed on section 6 of the Allotment Act by the Department of the Interior from the time of its enactment until 1912 when the administration of the act was turned to the county courts. This interpretation and application of said section, during said period of time, was apparently in accord with the interpretation sought by the appellant. We have also considered the opinion of the Solicitor General rendered to the department in 1928 and followed by it since then. The conclusion of the Solicitor General in his opinion to the department is the same as ours.

The appellant next contends that even if subdivision 7, supra, is applicable to estates of deceased Osage Indians, that:

"Osage quarterly annuity payments, real estate acquired under and through a partition suit, rents, issues and profits from real estate, interest and profits on money, and dividends from building and loan stock, received during five and one-half years after the death of the father, do not constitute estate coming from said deceased father by inheritance."

84 O.S. 1941 §212 provides:

"The property, both real and personal of one who dies without disposing of it by will passes to the heirs of the intestate, subject to the control of the county court, and to the possession of any administrator appointed by that court for the purpose of administration."

The real and personal property of a decedent who dies intestate passes to his or her heirs as of the date of his or her death subject to the control of the county court for the purpose of administration. Title to such property is fixed in the heirs as of that date. See Davis et al. v. Morgan, supra; Seal et al. v. Banes et al., supra; Oil Well Supply Co. et al., v. Cremin et al., 143 Okla. 57, 287 P. 414. The property, both real and personal, of which Antwine Pryor died seized passed to his heirs immediately upon his death and the title thereto became fixed as of that date.

The income from the ancestral property, consisting of accruals of the headright, rentals received from agricultural leases on the land and the dividends on the building and loan stock from and after the date of the death of Antwine Pryor, constitutes new acquisitions or accumulations to the estate received from his deceased parent by virtue of his ownership. See Johnson v. Copeland's Administrator, 35 Ala. 521; Fawcett Inv. Co. v. Rullestad, 218 Iowa, 654, 253 N.W. 131, 94 A.L.R. 800; Bishop Trust Co. v. Thomas, 32 Hawaii, 140; Tucker et al. v. Brown, 185 Okla. 234, 90 P. 2d 1071; Roundtree v. Pursell 111 Ind. App. 522, 39 N.E. 747; Caruso v. Caruso, 103 N.J. E. 487, 143 A. 771.

In this connection the appellees cite and rely upon In re Pierce's Estate, 161 Okla. 94, 17 P. 2d 411; In re Wagner's Estate, 178 Okla. 384, 62 P. 2d 1186; Boyes' Estate et al. v. Boyes et al., 184 Okla. 438, 87 P. 2d 1102. The question determined by those cases was whether or not the property involved was acquired by the joint industry of the husband and wife. Such cases are not analogous or in point; they do not go to the question of whether the income received from inherited property comes by inheritance, and for this reason are not of controlling importance here.

Although title by purchase includes every known method of acquiring an estate except that by which it passes to an heir by operation of law, it is generally held that a partition suit does not change an estate otherwise ancestral to an estate of purchase; the division of property owned in common by such inheritance does not ordinarily change the title from one of inheritance to a title by purchase. See In re Moran's Estate, 174 Okla. 507, 51 P. 2d 277, 103 A.L.R. 227. The concentration of title to an undivided interest in land in a portion thereof remains the same title in legal

effect, and therefore that portion of an ancestral tract of land received by an heir by partition is ancestral though a sum of money is required to be paid to equalize the aliquot parts between the heirs.

In the case of United States v. Hale, supra, it was held that since in the partition suit the minor, Charles Bigheart, was distributed a lesser interest than that which he inherited, he acquired by purchase the interest in the land under the partition decree and not by inheritance. Such holding, in our opinion, is contrary to our decision in Re Moran's Estate, supra.

It is our conclusion that the $2,605.38 designated trust fund and the $22,065.44 designated as the surplus fund set over to Woodrow Pryor, as of the time of his father's death, the partial headright interest, the building and loan stock and the land decreed to Woodrow Pryor, came by inheritance from his father and should have been, as it was, distributed under said subdivision 7, supra, to the other children of his father and the issue of the deceased child. Any balance of the funds held by the Indian Agency at the time of and after Woodrow Pryor's death which was received by it after the death of said Antwine Pryor, as accumulations to such funds by reason of rents, interests, payments on the headright, etc., should descend and be distributed under section 6, supra, of the Osage Allotment Act, to his mother.

The judgment is accordingly affirmed as to the items determined to be ancestral in their nature and reversed as to the items determined to be new acquisitions.

HURST, C.J., DAVISON, V.C.J., and RILEY, OSBORN, WELCH, and CORN, JJ., concur. BAYLESS and GIBSON, JJ., dissent.

GIBSON, J. (dissenting). I concur in the following conclusions reached in the majority opinion: (1) That the estate which Woodrow Pryor inherited from his father was an absolute estate, and

(2) that upon his death his estate therein passed to his heirs under the laws of the United States.

With these two conclusions as the premise, the sole remaining question is what such laws provide, and is therefore simply one of construction. It is the holding of the majority that subdivision 7 (84 O.S. 1941 §213) is applicable and therefore controlling. In this I cannot concur. In my opinion subdivision 7 is not operative in the instant case and the estate passed under section 6 of the Osage Allotment Act (34 St. L. 539).

The basis of the majority conclusion is that the intent and purpose of section 6 was merely to change subdivision 2 of the Oklahoma statute, and hence, with the congressional adoption of the Oklahoma law, subdivision 7 was included and stands in pari materia with section 6. And proceeding on this premise it is sought to reconcile the two provisions by holding that subdivision 7 applies where the estate was inherited from a deceased parent and section 6 where the land was not so inherited. And it is urged that the intent to so limit section 6 is reflected in the fact that thereunder both parents take equally, a situation that cannot obtain where the estate was inherited from a parent. In support of such conclusion there is cited the holding of this court in He-ah-to-me v. Hudson, 121 Okla. 173, 249 P. 138, and United States v. Hale, 51 Fed. 2d 629.

In my opinion neither case gives any authoritative support to the conclusion reached, but that each, to the extent it is authoritative, is contrary thereto. In the Hale Case the land of which the minor died seized was inherited by the minor, a sister and his father from his mother. Thereafter the lands were partitioned and it was of the portion thereof set apart to him in kind that he died seized. It was contended that by reason of the ancestral character of the estate the sister took to the exclusion of the father. The court held:

"It was not an inheritance but a title which had come to him by purchase. It vested in George Bigheart as his father and heir, under the terms of section 6 of the Allotment Act of June 28, 1906 (34 Stat. 539, 545), and not under the state law."

Having reached the conclusion that the estate was not ancestral, there was no occasion for the court to determine whether subdivision 7 or section 6 controlled the devolution. Therefore, the statement that subdivision 7 would apply if the estate were ancestral is obiter dictum. The manner in which it is expressed indicates no more than that the conclusion was based solely on the holding in He-ah-to-me v. Hudson, (supra), since it is not otherwise supported and is entitled to no greater weight than the holding in that case. However, the above-quoted holding to the effect that the father took the entire estate as next of kin by force of section 6, which holding was decisive of the question determined, is diametrically opposed to the idea that section 6 was designed by Congress to be operative only where both parents survived the intestate, which is made one of the bases for the majority's conclusion.

Concerning the case of He-ah-to-me v. Hudson, supra, the following is to be said: There a deceased incompetent Osage allottee was survived by his wife and two children, to whom the estate descended. About one year after the death of the father one of the children died at the age of two years and the question there, as here, was whether the mother or the other child took the entire interest of the deceased child. We there held that He-ah-to-me, who was the surviving sister of the deceased child, by virtue of subdivision 7 took the deceased child's interest to the exclusion of the mother.

It is manifest that the question considered by the court was merely whether one or another of the subdivisions of the Oklahoma statute controlled the devolution, and it is evident that the applicability of section 6 was neither presented nor considered. In such circumstances courts decline to recognize that the decision there can be deemed decisive of the question here for reasons clearly stated in United States v. Mitchell, 271 U. S. 9, 70 L. Ed. 799, as follows:

"A question not raised by counsel or discussed in the opinion of the court has been decided merely because it existed in the record and might have been raised and considered."

The decision in that case rests on the Oklahoma statutes operating solely as such and without regard to section 6 of the Federal law. The holding there can afford support for the majority opinion only on the assumption that section 6 of the Act of Congress was merely a substitute for subdivision 7 of the Oklahoma statute, thus making subdivisions 2 and 7 Federal laws in pari materia. Considering them to be in pari materia, the reasoning and conclusion in that case would sustain the majority holding. But if the two provisions are not in pari materia, which I shall hereinafter undertake to show, the reasoning therein not only does not support but actually overturns the basis upon which the majority opinion rests.

In the He-ah-to-me Case we quoted with approval the California construction of the statute, which is requoted in majority opinion, and recognized: (1) that there would be conflict between subdivision 2 and subdivision 7 but for reconciliation; (2) that for the purposes of reconciliation the provisions of subdivision 7 are to be considered as incorporated in subdivision 2 as an exception thereto; and (3) that the effect of subdivision 7 when applicable is merely to change the course of devolution of the property of the minor, the same thing to which the exception in section 6 is specifically directed.

The first mentioned determination accords with my view that there exists a conflict between subdivision 7 and the rule of descent set forth in the exception in section 6 and that such conflict

24

can be resolved only upon the theory that both are in pari materia, a theory that cannot be indulged for reasons to be stated. The second mentioned determination affords an answer to the contention that the exception in section 6 was directed solely at the rule in subdivision 2. If subdivision 7 is to be construed as an incorporated exception to the rule there announced, the effect of the exception in section 6 is to be regarded as a substitute for both. The subject matter of both is descent upon death of a child and the exception in section 6 which deals therewith announces a single rule therefor. The general rule in such case (59 C. J. 922, §522) is declared in State ex rel. Matzdorf et al. v. Scott et al., 52 Nev. 232, 286 P. 119, to be:

"Where it is plain that it is legislative intent in later act to embrace whole subject, then portion of earlier act involving same subject matter which is not included in later act is considered as discarded."

In recognition of weight to be accorded contemporaneous construction of the law by executive officers of the government whose duty it was to administer the law, the majority opinion concedes that from the time of the Allotment Act until 1912, when jurisdiction of the administration of the estates passed to the state courts, the Interior Department construed section 6 to operate in such cases to the exclusion of subdivision 7. Emphasis is placed, however, upon the fact that since an opinion of the Solicitor General rendered to said department in 1928, wherein said subdivision was held to be operative, the administration had been in accordance therewith. And it declared "The conclusion of the Solicitor General in his opinion to the department is the same as ours." The language of the Solicitor which reflects his conclusion and the reasons therefor is as follows:

"The state statute which fixes the succession in the brothers and sisters of deceased unmarried minors does not deal with the estate of such minor but concerns the original estate of the deceased ancestor. The estate which vests in the minor issue of such decedent is in its nature conditional in that if such issue dies during minority and unmarried, the course of its devolution is continued from the ancestor and not commenced anew with the death of the unmarried infant. This is the condition upon which the infant receives the inheritance and the state statute which annexes the condition is not in conflict with the exception in the Federal statute."

In the majority opinion it is said:

"Under our statute (84 O.S. 1941 §212) and the decisions of this court (Seal v. Banes, 168 Okla. 550, 35 P. 2d 704; Davis v. Morgan, 186 Okla. 30, 95 P. 2d 856), upon the death of Antwine Pryor his entire estate descended and upon such descent became immediately vested in his heirs, of whom Woodrow Pryor was one."

I cannot see the fundamental accord between the opinion of the Solicitor and that of the majority of the court in view of the latter repudiating the basis upon which the former rests unless it be that both the opinion of the Solicitor and that of the majority assume that section 6 of the act and subdivision 7 are in pari materia. I am constrained to feel that the weight to be accorded such opinion in the instant case cannot properly exceed in degree the extent to which the reasons therefor are to be recognized as sound. The effect of the Solicitor's holding is that the estate passed not as the estate of the deceased minor but as that of the ancestor.

Since the entire estate passed to the minor in this case, and he having died intestate, the estate necessarily passed from him by the law of succession. Under 84 O.S. 1941 §211, it is provided:

"Succession is the coming in of another to take the property of one who dies without disposing of it by will."

As we have seen, the estate of the heir is complete and in no sense conditional and it follows that the condition mentioned is something that inheres not in the estate of the heir but in the law,

and that too the law of succession. Succession laws do not impair the estates of the living (18 C. J. 862) but operate on estates of the dead and then only in the event same have not been disposed of—a recognition of the superior power incident to the ownership. In principle the condition imposed by subdivision 7 that it will control the descent in a certain contingency is no different than that imposed by 84 O.S. 1941 §211, supra, that the law of succession will apply in the contingency therein mentioned.

It is my belief that the holding which limits section 6 in its operation to subdivision 2 is not only not sustained by any of the authorities relied on, but that they support the conclusion that the section, if considered as applying to the Oklahoma statute as a whole, is in conflict with subdivision 7.

It is my opinion that section 6 is a qualification of the Oklahoma statute of descent as a whole and thus repeals every provision of the statute in conflict therewith. This court has so held.

Section 6 of the Allotment Act, which was enacted to be, and must be accepted as, expressive of the congressional intent, is as follows:

"That the lands, moneys, and mineral interests, herein provided for, of any deceased member of the Osage Tribe shall descend to his or her legal heirs, according to the laws of the Territory of Oklahoma, or of the state in which said reservation may be hereinafter incorporated, except where the decedent leaves no issue, nor husband nor wife, in which case said lands, moneys, and mineral interests must go to the mother and father equally."

From a consideration of its language there is absolutely no warrant to say the exception therein had reference solely to subdivision 2 of the Oklahoma statute. And, in my opinion, to say so is to distort the words of the act which expressly declare that the exception applies to the Oklahoma laws of descent as a whole and therefore is as broad in its scope as the laws to which it applies. Because, since it is no less comprehensive than the laws adopted, it follows that it must operate co-extensively therewith (Washington v. Miller, 235 U. S. 422, 59 L. Ed. 295; Grayson v. Harris, 267 U. S. 352, 69 L. Ed. 652). So considered, the rule of descent therein prescribed is superior to and not in pari materia with provisions of the Oklahoma statute that are inconsistent therewith. And that such is the case we have expressly declared. In Re Mosier's Estate, 109 Okla. 228, 235 P. 199, we declined to recognize the contention that by reason of the provision of the Enabling Act and section 2 of the Schedule to the Constitution of Oklahoma the territorial laws of descent and distribution were placed in force and made applicable to Osage Indians, and there held:

"That the laws of descent and distribution of the State of Oklahoma supplanted the laws of the territory of Oklahoma as to descent and distribution, put in force and effect in the Osage Tribe by section 6 of the Allotment Act of 1906, but with the exception set out in said section 6 of the Osage Allotment Act."

And further as follows:

"There is no special act of the Congress repealing or supplanting the exception contained in section 6 of the Osage Allotment Act of June 28, 1906, which was in the nature of a special enactment, and, therefore, said exception has never been repealed."

And, for the purpose of the application of the law, we there held that section 6 overturned subdivision 3 of the Oklahoma statute, which was in conflict with the terms thereof. The conflict in subdivision 7 is no less apparent than that of subdivision 3. The application of section 6 to subdivision 3 eliminates any idea that it was limited in its operation to subdivision 2, and being not so limited it was as fully operative to overturn subdivision 7.

In my estimation the only countenance of correctness the majority opinion

26

can obtain is through the possible conclusion, asserted but not supported by authority, that the exception in section 6 is to be deemed to apply only where both parents survive. If such be true, is would follow not only that the sole surviving parent could not inherit property that the child inherited from the deceased parent, but also that the survivor could not inherit property that was obtained from other sources, including the child's allotment. Hence to hold that such construction would limit the force of the section to that of an amendment to subdivision 2 is to incorporate a qualification that is not there, a practice we have condemned (Pasley v. Union Nat. Bank of Bartlesville, 137 Okla. 171, 278 P. 621). Had it been the intent of Congress to merely qualify the effect of subdivision 2 it could easily have said so in no uncertain terms. It could have directed the exception expressly thereto or otherwise manifested such intent. It is more reasonable to presume that Congress intended that upon the death of the child the parents as its next of kin take as a class and, therefore, if both be living take equally, than that neither could take unless the other survived. Such is the effect of the holdings in both the Hale and Mosier Cases. And so construed, there is no room for the operation of subdivision 7.

And I consider it more reasonable to conclude that Congress in making the exception co-extensive in operation with the whole Oklahoma law of succession designed to overthrow the doctrine of ancestral estates as reflected in subdivision 7 and in denial thereof substitute therefor a law which recognizes that the source of the title is tribal rather than individual and the parents to be mere conduits so long as the descent is cast from restricted members.

The death and descent in the instant case comes squarely within the express language of section 6. And such being true, I am of the opinion that there can be no warrant to hold otherwise. And with all due respect to my associates who concur in the majority opinion I insist that no warrant so to do is reflected in the opinion.

BAYLESS, J., concurs in these views.