YARBROUGH v. OKLAHOMA TAX COMMISSION.
WEST v. SAME.

Nos. 31947, 31948. Oct. 28, 1947.

Judgment Affirmed June 14, 1948.

See 68 S. Ct. 1510.

*193 P. 2d 1017.*

Frank T. McCoy, John T. Craig, and John R. Pearson, all of Pawhuska, and Frank Mahan, of Fairfax, for plaintiffs in error.

E. L. Mitchell, of Arapaho, and C. W. King, of Oklahoma City, for defendant in error.

BAYLESS, J. These appeals from the Oklahoma Tax Commission involve only the issue of the power of the State of Oklahoma to levy and collect an estate, transfer, and inheritance tax under 68 O.S. 1941 §988 et seq., on the estates involved. Dora Neal Rector, a full-blood, allotted, restricted Osage Indian, died leaving an estate consisting of (1) allotted homestead land; (2) allotted surplus land and land inherited from other Osages; (3) 2 and 13/252nds Osage mineral headright interests; (4) cash in the hands of the United States Treasurer derived from the income from the headright interest; and (5) cash in the hands of the United States Treasurer representing her share of the sale price of tribal lands in Kansas. It is conceded the allotted homestead is nontaxable and the Commission made no order taxing it under the above statute. Charles West, Jr., a deceased minor, unallotted Osage Indian, left an estate consisting of (1) 1 and 919/2520ths Osage mineral headright interests; (2) land purchased with funds derived from the headright interests and land inherited from other Osages; (3) cash in the hands of the United States Treasurer representing accruals of income from the headright interests; (4) personal property purchased with funds derived from the headright interests; and (5) cash in the hands of the United States Treasurer representing his share of the sale price of tribal lands in Kansas. These appeals are consolidated for presentation to us and decision. In addition to the briefs of the parties, briefs amicus curiae have been filed.

Before directing our attention to the specific issues argued, we will discuss an aspect of these cases that inheres in the position of appellant and is an assumption that underlies virtually all of their arguments. It is both asserted and implied that there is no reason, and there should be no disposition on the part of this court, to delve into this issue again. Briefly the main issue can be stated thus: No tax is due under an earlier decision of this court, to-wit: Childers v. Pope, 119 Okla. 300, 249 P. 726.

In that case it was held that the portion of the estate of a restricted Indian consisting of land and mineral interests was not taxable under Oklahoma law. However, this holding was not original with this court; there is no language in it that manifests a concurrence in the rationale of the rule adopted, and it is obvious the opinion was forcedly adopted by the controling circumstance of an intervening opinion by the Supreme Court of the United States, to wit; Childers v. Beaver, 270 U. S. 555, 70 L. Ed. 730(7). It will be observed in reading the Childers v. Pope opinion that the decision there was based solely on the rule of the Beaver case, supra, and in the Pope case this court remarked it was "not disposed to go further than the rule therein established" (Beaver, supra), and expressly made subject to Oklahoma's taxing power, as, an exception to the rule of the Beaver Case, the personal property of the estate.

One of the best of reasons for again going into this issue, since our independent judgment was obstructed earlier, is the recent review and revision by the Supreme Court of the United States of some of the rules of law of the earlier federal decisions on this branch of the law. The traditional federal court view of the nontaxability of the property of Indians is illustrated by United States v. Rickert, 188 U. S. 432, 47 L. Ed. 532, and Childers v. Beaver, supra. The alteration in this view is disclosed by Shaw v. Gibson-Zahniser Oil Corp., 276 U. S. 575, 72 L. Ed. 709; Supt., etc., v. Comm. Int. Rev., 295 U. S. 418, 79 L. Ed. 1517; United States v. Oklahoma Tax Commission, 131 Fed. 2d 635; Helvering v. Mountain Producers Corp., 303 U. S. 376, 82 L. Ed. 907; Oklahoma Tax Commission v. United States, 319 U. S. 598, 87 L. Ed. 1612, and the various decisions discussed therein.

In Oklahoma Tax Commission v. United States, supra, it was stated:

"Childers v. Beaver, 270 U. S. 555, 70 L. Ed. 730, 46 S. Ct. 387, supra, was in effect overruled by the Mountain Producers Corp. decision."

This alteration is sufficient justification for the state's renewed effort, an effort regarded as serious and persistent in the opinion in Oklahoma Tax Commission v. United States, supra.

We reject at once as untenable the assertion that the title to this property remained in the federal government under the various laws applicable to the Osages. Globe Indemnity Co. v. Bruce, 81 Fed. 2d 143, and In re Martin's Estate, 183 Okla. 177, 80 P. 2d 561. It will not serve any purpose useful to a decision in this matter to undertake to determine precisely what aspect of title remained in the federal government or was assumed by it as an instrumentality to further its supervision of and duty toward Osage Indians under the restrictive terms of the allotment laws and subsequent laws. The case of Oklahoma Tax Commission v. United States, supra, definitely establishes the rule that the levying of a tax such as this on the devolution of property similarly affected does not interfere with the federal government. There is a distinct difference between the situation of Osage Indians and their property, under the acts applicable to them, and the allottee and the property involved in United States v. Rickert, 188 U. S. 432, 47 L. Ed. 532, as is pointed out in Oklahoma Tax Commission v. United States, supra. Osage Indians are full citizens of the State of Oklahoma. Osage Indians have title to their allotments, to their aliquot parts of the mineral headright interests, and land sale trusts, and the accumulations from these sources in the federal treasury. These properties are identifiable, subject to constitutional and statutory protection, derive benefits for their owners, and pass by law at death. The title, if such it may be called, that rests in the federal govern-ment is a mere instrument for service, whereas the title in the Indians is an individual, beneficial, and valuable thing.

The Supreme Court of the United States said in Oklahoma Tax Commission v. United States, supra:

"It is true that our interpretation of the 1933 statute must be in accord with the generous and protective spirit which the United States properly feels toward its Indian wards, but we cannot assume that Congress will choose to aid the Indians by permanently granting them immunity from taxes which they are as able as other citizens to pay. It runs counter to any traditional concept of the guardian and ward relationship to suppose that a ward should be exempted from taxation by the nature of his status, and the fact that the federal government is the guardian of its Indian ward is no reason, by itself, why a state should be precluded from taxing the estate of the Indian. We have held that the Indians, like all other citizens, must pay federal income taxes. Superintendent of Five Civilized Tribes v. Commissioner of Internal Revenue, supra, (295 U. S. 421, 79 L. Ed. 1520, 55 S. Ct. 820). 'Wardship with limited power over his property' did not there 'without more render (the Indian) immune from the common burden.' A federal court has held, in a well reasoned decision defended before us by the Solicitor General of the United States, who is not a party to this action, that an Indian's estate is subject to the federal estate tax. Landman v. Commissioner of Internal Revenue (C.C.A. 10th) 123 F. 2d 787. Congress cannot have intended to impose federal income and inheritance taxes on the Indians and at the same time exempt them by implication from similar state taxes.

"Congress has passed laws under which Indians have become full-fledged citizens of the State of Oklahoma. Oklahoma supplies for them and their children schools, roads, courts, police protection and all the other benefits of an ordered society. Citizens of Oklahoma must pay for these benefits. If some pay less, others must pay more."

All of this is summed up in that opinion in these words:

"Recognizing that equality of privilege and equality of obligation should be inseparable associates, we have recently swept away many of the means of tax favoritism."

In that opinion reference was made to the fact the federal government is collecting from Indian wards an income tax and an estate tax. In this appeal our attention has been called to the fact that the federal government collects an estate tax on Osage estates. The Treasury Department's act in collecting such tax is based upon (1) the nature of the title of the Osage Indian, and (2) the power of the Osage Indian to pass this property at his death. There is nothing in any of the decisions called to our attention that indicates that the United States government has a power to levy an estate tax in the case of its Indian wards that is not possessed by the State of Oklahoma. As we understand the rule of immunity from taxation by reason of the wardship exercised by the federal government over Indians, including restrictions on alienation, it means a lack of power in either government to tax, not simply that the federal government has such power and Oklahoma has not.

If the title to this property yet remains in the federal government, as contended by appellants, that government certainly would not tax its own property. Yet the record and decisions disclose that the federal government does exact an estate tax in these and similar instances. If the federal government does not regard its position as guardian of the Indians as a bar to its exacting income and estate taxes from the Indians, it is a reasonable assumption that it does not look upon the protective restrictions placed around the Indians' property as affording tax immunity. The Supreme Court of the United States said, in Oklahoma Tax Commission v. United States, above, in referring to earlier federal court decisions establishing and extending tax immunity in favor of the Indian and his privies:

"None of these cases held, nor has this court ever decided, that congressional restriction of an Indian's income carried an implication of estate tax exemption. . . . The immunity formerly said to rest on constitutional implication cannot now be resurrected in the form of statutory implication. . . . If Congress intends to prevent the State of Oklahoma from levying a general nondiscriminatory estate tax applying alike to all its citizens, it should say so in plain words. Such a conclusion cannot rest on dubious inferences. 'Non-taxability and restriction upon alienation are distinct things.'"

While this last-cited and quoted case involved the estates of Creek Indians whose allotments and restrictions on alienation and the management of property rests on different laws, the general tone of the court's language in that decision clearly supports the Oklahoma Tax Commission in this case.

Since our former decision in Childers v. Pope, supra, was based solely upon a following of the rule of Childers v. Beaver, supra, and since the Supreme Court of the United States in reviewing various former decisions has itself "in effect overruled" Childers v. Beaver, we are at liberty to depart from following it.

We conclude that the order of the Oklahoma Tax Commission should be affirmed, and this tax assessed against these estates to the extent heretofore stated.

The pronouncement of this rule and the overruling of Childers v. Pope, supra, constitutes a definite change in the application of this tax to certain property of estates. The result is that under this decision certain property of estates will be subject to this tax which under the former construction was not so taxable, and it is urged that we should restrict this rule change to prospective effect only as to other estates administered upon and closed prior to the effective date of this de-

cision. Upon that point, we observe that the rule of our former decision, following Childers v. Beaver, was established in 1926, and under that rule of nonliability of such estates to the tax here involved, it is a matter of common knowledge, as well as judicial knowledge, that many estates have been administered upon and closed and titles vested with no thought that any such tax liability existed, and without any demand for or effort to collect such a tax; and that the stability of titles might be grieviously affected unless we set at rest, or permit to remain at rest, any question as to the liability of any such estates for any such tax.

It is suggested on the part of the Tax Commission that no intention exists to undertake to surmount the apparent difficulties and to seek to apply this rule of taxability to such estates heretofore closed. We fully agree with the thought that no such effort should be made, and to that end, and for the reasons stated, we deem it our duty, and clearly within our authority, to give the aforesaid prospective effect only to this change in such rule. See Oklahoma County v. Queen City Lodge No. 197 I.O.O.F., 195 Okla. 131, 156 P. 2d 340, and the many authorities therein cited.

It is therefore adjudged that this rule change is adopted for only prospective application to other estates so as not to apply to other estates administered upon and closed prior to the date of this opinion.

For the reasons stated, and upon the consideration and conditions stated, the order of the Tax Commission is affirmed.

DAVISON, V.C.J., and WELCH, ARNOLD, and LUTTRELL, JJ., concur. RILEY and CORN, JJ., concur in part and dissent in part, as to prospective operation only. HURST, C. J., and GIBSON, J., dissent.

———

HURST, C.J. (dissenting). Two questions inhere in this case, (1) may Oklahoma levy an estate tax upon the transmission of property, the legal title to which is vested in the United States, and which is held in trust for the benefit of an Indian Tribe, where the only right of the deceased Indian allottee is to receive his aliquot portion of the income from the trust property as the United States government may from time to time elect to distribute it in the absence of an Act of Congress authorizing such tax, and (2) did the Oklahoma Legislature intend to levy a tax upon the transmission of such right? I think both questions should be answered in the negative. We are not concerned with whether Congress should authorize such a tax to be levied, but rather whether it can be done without the consent of Congress.

1. The authorities relied upon in the majority opinion do not sustain the result reached. None of the cases relied upon involved a tax upon property held in trust by the United States for the benefit of its Indian wards. The Mountain Producers case, 303 U. S. 376, involved a tax upon the income of an oil and gas lessee of state lands, and it stands for the rule that the interest of the lessee is too remote to be protected from the levy under the rule exempting state instrumentalities from Federal taxation. The property involved in the other cases relied upon was owned in fee by the individual Indians, but the alienation of such property was restricted. The Five Civilized Tribes case 319 U. S. 598, recognizes the distinction between property owned in fee by individual Indians and property held in trust by the United States for their benefit, and cites United States v. Rickert, 188 U. S. 432, in making such distinction. The Rickert Case has never been departed from. If, as there held, property held in trust by the United States for the Indian allottee is not subject to state ad valorem taxation without the consent of Congress, it would seem that the state cannot levy an estate tax on its transmission by the death of the allottee, without the consent of Congress.

Our decision should be based upon sound legal principles, and not upon what we understand to be the "tone" or trend of the recent decisions of the United States Supreme Court in other tax cases not involving the precise question here involved. After all, it is the function of Congress and not that of the courts to declare the policy of the United States with reference to its Indian wards. No remote Federal instrumentality is here involved, but rather the United States government itself. Congress has not provided a method of collecting the tax and has not authorized those having the custody of the funds held in trust to disburse them for such purposes. 25 U. S. C. A. §123 provides:

"No money shall be expended from Indian tribal funds without specific appropriation by Congress."

It is my view that until Congress expressly or by necessary implication authorizes the tax to be levied and collected, it cannot be done because of the implied immunity doctrine. The question of whether these headright interests are or may be taxed by the federal government is beside the point. The doctrine of implied immunity operates only to prevent one government from taxing the property or instrumentalities of another government, and does not prevent a government from taxing its own property or instrumentalities. 61 C.J. 361, 371; 51 Am. Jur. 279.

2. Both this court and the Federal courts are committed to the rule that the descent of the property here involved is cast under the Federal statutes and not under the state statutes. See In re Pryor's Estate, 199 Okla. 17, 181 P. 2d 979, and the cases there cited. Our estate tax statute purports to cover only such property of the decedent as passes "by will or the intestate laws of this state." 68 O. S. 1941 §989. Estate and inheritance taxes are excise taxes "imposed on the privilege of transmitting or receiving property upon the death of the owner." 28 Am. Jur. 12. See, also, 61 C.J. 1592. Our Legislature did not express an intention to levy an estate tax on the privilege of transmitting property under the laws of the United States, and it seems elementary that it could not constitutionally do so. 61 C.J. 1604, note 41; 28 Am. Jur. 16, 90; In re Estates of Harkness, 83 Okla. 107, 204 P. 911, 42 A.L.R. 399; Frick v. Pennsylvania, 268 U. S. 473, 69 L. Ed. 1058, 45 S. Ct. 603, 42 A.L.R. 316.

For the foregoing reasons, I respectfully dissent.

GIBSON, J., concurs in this dissent.